

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR SUSSEX COUNTY

```
--------------------------X
DELAWARE DEPARTMENT OF      :
NATURAL RESOURCES &         :
ENVIRONMENTAL CONTROL,      :
an Administrative           :
Agency for the State of     :
Delaware,                   :
                            :
          Plaintiff,        :   ID No. S18M-06-002 RFS
                            :
v.                          :
                            :
MOUNTAIRE FARMS OF          :
DELAWARE INC., a            :
Delaware Corporation,       :
                            :
          Defendant.        :
--------------------------X
```

T R A N S C R I P T
O F
P R O C E E D I N G S

Sussex County Courthouse
Georgetown, Delaware
Tuesday, November 20, 2018

The above-entitled matter was scheduled for

hearing in open court at 10:00 a.m.

BEFORE:

THE HONORABLE RICHARD F. STOKES, JUDGE.

APPEARANCES:

DEVERA B. SCOTT and WILLIAM KASSAB,
Deputy Attorney Generals, appearing on
behalf of the Plaintiff.

THOMAS C. CRUMPLAR, ESQ., appearing on
behalf of the Plaintiff, Balback.

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

**EFiled:  Dec 06 2018 02:14PM EST**
**Transaction ID 62733296**
**Case No. S18M-06-002 RFS**

APPEARANCES CONTINUED..

CHASE T. BROCKSTEDT, ESQ., and PHILIP C.
FEDERICO, ESQ., appearing on behalf of
the Plaintiffs, Gary and Anna-Marie
Cuppels.

CHRIS NIDEL, ESQ., appearing on behalf
of the Proposed Interveners.

MICHAEL W. ARRINGTON, ESQ., appearing on
behalf of the Defendant.

1                    P R O C E E D I N G S

2           THE COURT:  Are we ready on our civil

3    side?

4           So we have the various motions to

5    intervene.  We have oral argument at this point

6    in time.  I have an application for a motion,

7    admission pro hac vice, from Jacobs & Crumplar

8    on behalf of Chris -- is it Nidel?

9           MR. CRUMPLAR:  Nidel.

10          THE COURT:  Good morning.  How are you?

11          MR. CRUMPLAR:  Thomas Crumplar.  I

12   represent what's known as the Balback

13   plaintiffs.  That's an individual lawsuit.

14          Chris Nidel is right here.  I understand

15   there is no opposition.  With Your Honor's

16   permission, we would like him to argue.

17          THE COURT:  Yes.  That's probably the

18   last time I will hear no opposition.

19          MR. CRUMPLAR:  Just by way of

20   intervention, Mr. Nidel is based in Washington

21   DC.  He's an environmental lawyer.  He's been

22   practicing almost 15 years doing that.  He's

23   represented probably over a thousand individual

1    plaintiffs and appeared throughout the country

2    in both levels of courts in class actions as

3    well as individual cases.  And he's done

4    interventions such as this.  I hope his

5    expertise and experience will be helpful to the

6    Court.

7           THE COURT:  Thank you very much.  And

8    welcome, sir.  We'll sign the order.  I will

9    pass this back to you.

10          Very well, I've read all of the

11   submissions and also reviewed all the exhibits.

12   So this is the time for oral argument.  So the

13   way this would proceed, we will hear from the

14   people applying to intervene first.

15          MR. BROCKSTEDT:  Good morning, Your

16   Honor.  It's good to see you.

17          THE COURT:  It's good to see you and

18   other counsel.

19          MR. BROCKSTEDT:  May it please the

20   Court, Chase Brockstedt of the law firm Baird

21   Mandalas Brockstedt.  I would like to introduce

22   the Court to my co-counsel, Phil Federico, with

23   the firm Schochor, Federico and Staton.

                    ANNE L. SWOYER, RPR, CCR
                     OFFICIAL COURT REPORTER

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1          And, Your Honor, together we represent

2     Gary and Anna-Marie Cuppels, who are the

3     plaintiff interveners.  But we also represent

4     more than 750 people who have been harmed by the

5     wrongful discharge of highly contaminated

6     wastewater and toxic air emissions from the

7     Mountaire facility.

8          These folks cannot drink the water from

9     their wells.  They live in fear every time they

10    use this water to cook their food.  They're

11    scared to take a shower and bathe their

12    children.  They can't breathe the air inside

13    their homes and they can't open their windows.

14          They are suffering the health effects

15    from the chronic exposure to nitrogen and other

16    contaminants and the emissions from Mountaire's

17    open air septic tanks, and they have suffered

18    property damage.  And all of this has been at

19    the hands of Mountaire.

20          These are people with limited resources

21    and no options.  Quite simply, they are stuck

22    and they need our help.

23          So why are we here today?  DNREC and

1    Mountaire are asking this Court to rubber stam

2    a settlement agreement that will have far

3    reaching effects.  It will resolve the state

4    court action.  It will dispose of a federal

5    court litigation.

6         And, importantly, Your Honor, it will

7    create an order from this Court that fails to

8    address the causes of groundwater contamination

9    and air emission.  It doesn't protect our

10   clients.  It doesn't require Mountaire to clean

11   up its mess and comply with the law.  It impairs

12   and impedes plaintiff interveners' rights and

13   interest without public participation or

14   comment.  It will cause irreparable harm.

15        And I think, most importantly, Your

16   Honor, it will completely release Mountaire from

17   all past liability going back to its purchase of

18   the plant in 2000 and all future liability until

19   some unknowable and unknown date and time at

20   which Mountaire tells DNREC that it has reached

21   substantial compliance with the settlement

22   agreement.

23        THE COURT:  This is Paragraph 61?

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

1          MR. BROCKSTEDT:  That's correct, Your

2     Honor.

3          We have two options, Your Honor.  One is

4     that this case and this court can be stayed.

5     And we can deal with what I'm going to talk to

6     you about are the federal claims in federal

7     court.  Or plaintiffs should be, plaintiff

8     interveners should be allowed to intervene in

9     this matter under Rule 24.

10          THE COURT:  Not to get you off the train

11     track.  I apologize.  But one of the arguments I

12     think made by Mountaire was that this is

13     exclusively state and nothing federal.  What is

14     your position on that?  You've just triggered

15     that thought when you were talking about your

16     federal claims.

17          MR. BROCKSTEDT:  I'm glad you asked

18     that, Your Honor.  Can I explain some context?

19     And then I'm going to answer your direct

20     question.

21          THE COURT:  I'll tell you what; I'm

22     going to try to remain silent.

23          MR. BROCKSTEDT:  No, no, no.  That's

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

1    okay.

2         DNREC's actions with Mountaire's

3    cooperation in this case have been deliberate.

4    Okay?  They filed a federal court case after

5    having pre-negotiated a settlement agreement, a

6    sweetheart deal as we call it.

7         So they filed two complaints.  They

8    filed one in federal court and one in state

9    court.  And immediately thereafter, they filed a

10   proposed settlement agreement in this court.  So

11   before I get to the answer on state claims and

12   jurisdiction and federal claims, Your Honor,

13   you've got to ask yourself, why the two

14   lawsuits.  Why did they have to file two

15   lawsuits?

16        So plaintiff interveners provided

17   Mountaire and DNREC with notice of their intent

18   to sue in federal court, which was a statutory

19   requirement.  And, basically, once that notice

20   was filed, DNREC had two options.  They could

21   let the time period expire and plaintiff

22   interveners could go ahead and file their

23   lawsuit in federal court or they could file

1    their own lawsuit.  And they chose the latter.

2         And so what they did in federal court,

3    Your Honor, was they filed a federal court

4    complaint alleging federal court actions under

5    the Resource Conservation and Recovery Act,

6    known as RCRA, and the Clean Water Act known as

7    the CWA.

8         At the same time, they filed a complaint

9    in state court.  And the reason they did that is

10   because they knew that plaintiff interveners

11   have an easier road to intervene in the federal

12   court case.

13        THE COURT:  That's the statute.

14        MR. BROCKSTEDT:  That's correct,

15   absolute right to intervene.

16        THE COURT:  And that statute is in the

17   Clean Water Act?

18        MR. BROCKSTEDT:  That's correct.

19        THE COURT:  And the other act, the

20   Resource Conservation and Recovery Act, is there

21   the same --

22        MR. BROCKSTEDT:  There is also a right

23   to intervene there too, Your Honor.


                    ANNE L. SWOYER, RPR, CCR
                    OFFICIAL COURT REPORTER

1           THE COURT:  Statutory?

2           MR. BROCKSTEDT:  Yes.

3           THE COURT:  So why is it being opposed

4    in the federal court by the state?

5           MR. BROCKSTEDT:  Not sure.  I'm not sure

6    why we're being opposed by DNREC in any

7    situation because they're supposed to be

8    representing the interests of the same people

9    that we represent.

10          THE COURT:  Well, I guess under Rule

11   24(a), you were talking about the rules of

12   coming in.  So we look at Rule 24.  24(a) says

13   one can come in.  One of the different

14   requirements, of course, is that there is an

15   interest that's going to be implicated and is

16   the right to intervene.  And the party there is

17   not adequately representing the applicant.

18          Well, with respect to the prong of a

19   right, it would seem for 24(a) purposes -- and

20   we will get to the position of the State in a

21   little bit -- it would seem that there is a

22   right under the Clean Water Act and Resource

23   Conservation Act -- that one too --

1    unconditional to come in to intervene.

2         And the only way they would not come in

3    would be if there was some judgement made that

4    DNREC was not adequately representing the

5    interests.

6         MR. BROCKSTEDT:  That's exactly right,

7    Your Honor.  That's correct.  That's our

8    position.

9         THE COURT:  Is that the basis for the

10   opposition for intervention in the federal

11   court?  I know it's opposed.  I read through all

12   the pleadings and I saw that's opposed.

13        MR. BROCKSTEDT:  Yeah.  I mean, that's

14   our impression.  I mean, I will let Ms. Scott

15   tell you exactly why they are intervening in the

16   federal court.  But those are the arguments that

17   they made, Your Honor.

18        But let's go back to the business of why

19   the two lawsuits.  And, again, importantly,

20   there wasn't a settlement agreement that was

21   filed in the federal court.  It was only filed

22   in the state court.

23        And so they have a problem.  And the

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

1    problem is that they don't want us to be heard

2    DNREC wants to shut the citizens out of the

3    process.  And Mountaire wants a pretty quick and

4    easy resolution to this thing without really any

5    teeth.

6         And so what they did was they filed in

7    federal court to block us there.  They also

8    filed in state court.  And then they filed their

9    settlement agreement.

10        But, Your Honor, they made a critical

11   mistake.  And the mistake -- and, again, we can

12   deal with all of these things in the federal

13   court.  But if we are talking about sort of the

14   state court handling this proceeding and state

15   court intervention, they made a critical

16   mistake.

17        And the mistake that they made was

18   despite their arguments that it is the plaintiff

19   interveners who are bringing federal court

20   claims and causes of action before this court,

21   it's actually DNREC and Mountaire that have

22   brought the federal court claims.

23        And the way that they have done it is,

1    first, the very state court complaint that DNR

2    filed in this case at Paragraph 3, it defined

3    the wastewater regulations, which include RCRA

4    and the CWA.  In Paragraph 5 it talked about the

5    reason why it brought its claims against

6    Mountaire in state court as a result of

7    violations of those wastewater regulations, RCRA

8    and CWA.  A little bit of a slight of hand

9    there.

10         But they really tipped their hand with

11   regard to the settlement agreement.  Because the

12   settlement agreement expressly resolves federal

13   claims.  So let me sort of tell you why.

14         In the federal court complaint, Count 1,

15   they talk about allegations against Mountaire

16   for practices that present, quote, an imminent

17   and substantial danger to human health under

18   RCRA.  Count 2, allegations of open dumping,

19   quote, open dumping under RCRA.  Count 3 was

20   Clean Water Acts for contamination that is

21   hydro-geologically connected to Swan Creek and

22   Indian River, both waters of the United States

23   under the CWA.

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

1         So we know what RCRA says.  We know wh

2     CWA says.  We know what their federal court

3     complaint alleges.

4         Then you turn to their state court

5     settlement agreement.  You look at Paragraph 61.

6     And what are they releasing?  Okay.  Any and all

7     liability for the past or in the future until

8     they reach substantial compliance for, quote,

9     imminent and substantial endangerment to the

10    health of the environment, quote, open dumping

11    and, quote, pollutants going into the surface

12    water that are hydro-geologically connected to

13    Mountaire, from Mountaire to Swan Creek and

14    Indian River.

15        So you've got a complaint in state court

16    that references RCRA and CWA as the wastewater

17    regulations that Mountaire has been violating.

18    And you've got a far-reaching, very broad

19    settlement agreement which completely disposes

20    of those claims.

21        We didn't bring federal claims in this

22    court, Your Honor.  We are trying to intervene

23    in a state court action in which DNREC has

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

1    brought federal claims against Mountaire.  And

2    they've come to this court hand in hand asking

3    this court to approve it.  So any argument that

4    we are trying to interject federal law into a

5    state court action should be rejected in its

6    entirety.  It is not the case.

7         And again, Your Honor, we can go to

8    federal court and we can litigate all these

9    things in federal court.  Frankly, no disrespect

10   to this court.  It's probably where they should

11   be litigated, I mean, if you ask me.  I mean, I

12   think it can go both ways.  But if we are not

13   going to be there, then we need to intervene in

14   this court.

15        Your Honor talked a little bit about

16   inadequacy of representation.  And that comes

17   from Rule 24.  And we can talk about standing

18   and we can talk about some other things as well.

19   But let's sort of go to the question that you

20   raised.

21        Rule 24 allows intervention as a matter

22   of right -- 24(a), rather, allows intervention

23   as a matter of right when the disposition of an

1    action may impair or impede the applicant's

2    ability to protect their interest relating to

3    the subject of the action.  If we want to talk

4    about their interest and how the settlement

5    agreement here impairs, impedes, we can do that

6    all day long, Your Honor.  I think our papers

7    flush that out pretty well.

8          But talking about the adequacy of

9    representation, there is a couple of points

10    about that which make clear that DNREC is not

11    adequately representing plaintiff interveners or

12    the folks that we represent in Millsboro.  They

13    are factual but they are also based in law as

14    well, Your Honor.

15          The EPA can't go around and enforce

16    environmental regulations in every state.  They

17    have to use the state agencies to do that.  So

18    EPA federally delegates to DNREC the ability to

19    regulate and enforce RCRA and the CWA.

20          But it's not a one-way street.  In

21    response to that, DNREC has to agree to certain

22    obligations.  They have to make certain promises

23    to the EPA and to the federal government.  And

1    one of those promises is that when you have an

2    action just like this, you've got to provide

3    public notice and the ability for the public to

4    comment.

5         THE COURT: Before the settlement.

6         MR. BROCKSTEDT: Correct.

7         THE COURT: Which wasn't done here.

8         MR. BROCKSTEDT: Well, which they are

9    asking this court to do.

10        THE COURT: Was the argument that you

11   were presenting in your brief that this should

12   have been done before filing or

13   contemporaneously with the filing, the notice

14   and the opportunity to be heard?

15        MR. BROCKSTEDT: Prior to even coming to

16   this court with a settlement agreement.

17        THE COURT: Prior to the filing.

18        MR. BROCKSTEDT: Right. And then in

19   addition to that, when you've got intervention,

20   the regulations say, hey, DNREC, you can't

21   oppose intervention if it's permissible by a

22   statute or a rule.

23        So what do we have in this case? There

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

1    is no notice to the public.  And by the way,

2    Your Honor, we reached out to DNREC before they

3    filed their complaint in federal court or state

4    court.  And we said, hey, listen, we would like

5    to sit down and talk to you.  We wrote to them.

6    We E-mailed them.  We had conversations with

7    them.

8        We've said, look, we've got some experts

9    here who, frankly, are some of the best and

10   brightest when it comes to these types of things

11   in the country.  We've got an expert who wrote

12   the wastewater regulations in the multiple

13   states.  We've got another expert who wrote 17

14   patents when it comes to wastewater treatment

15   plants and different techniques in the poultry

16   context.  And we've got folks on air emissions

17   and the health effects and hydro-geologists and

18   all the stuff.

19       We were offering to let the state use

20   that resource, at no cost to the State of

21   Delaware by the way.  Hey, listen, these people

22   do this for a living.  And they've got some

23   opinions as to the best way to potentially

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

1    resolve this.

2          So there was no notice.  There was no

3    participation possibility for public comment.

4    There was no opportunity for any of these folks

5    to talk about the problems that they are

6    experiencing and maybe the best ways to resolve

7    them.

8          They've opposed intervention in federal

9    court.  They are opposing it here today.  Again,

10   it's a weird juxtaposition.  Shouldn't Mountaire

11   sort of be on our side?  Shouldn't we be doing

12   this together?

13         And then what we have is we've got some

14   case law out there which talks about the fact of

15   whether or not the prosecution has been

16   diligent.  And the case law that we've cited in

17   our papers talks about the fact that when a

18   state, actor or an agency denies the opportunity

19   for public participation and opposes

20   intervention, then that in and of itself is

21   evidence of a lack of diligent prosecution.

22         There is actually even one case cited in

23   our papers, Your Honor, which says simply if you

EFiled:  Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1    file an enforcement action and the same day

2    you've already filed your settlement agreement,

3    that in and of itself is evidence of the failure

4    to diligently prosecute the case.

5         THE COURT:  I don't know if that was the

6    Frilling case or not.

7         MR. BROCKSTEDT:  That's right.  This is

8    actually a case cited by the Frilling court,

9    Your Honor.

10        And so the facts here -- and I challenge

11   anyone to point to a single fact in this case

12   which demonstrates that DNREC is adequately

13   representing the folks that are the most

14   impacted by Mountaire's, you know, their conduct

15   here, Your Honor.

16        THE COURT:  So DNREC says in one of

17   their arguments that there will be opportunity

18   for public input following the approval and when

19   the bids are out to do the work and that kind of

20   thing.  But that's a horse of a different color.

21        MR. BROCKSTEDT:  When you say following

22   approval, you mean following this court blessing

23   the settlement agreement.


ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

 1              THE COURT:  Yes, if that were to happe

 2              MR. BROCKSTEDT:  So let's talk about

 3    that concept for a second, Your Honor.

 4              So what they are basically arguing there

 5    is that, oh, no, no, there will be an

 6    opportunity down the road for there to be this

 7    conversation with the public about what we are

 8    doing is the right thing.

 9              In the meantime, what we know that they

10    are asking this court to do is to bless this

11    settlement agreement and make it a court order

12    so that it disposes of this case.  So the

13    ability for us to walk in here, unless there is

14    a violation of something, has gone.  It disposes

15    of the federal court case and the federal claims

16    there.  It releases Mountaire.

17              And I want you to think about the

18    release in these terms, Your Honor.  In 2003,

19    the EPA came in and cited Mountaire for

20    violating the Safe Drinking Water Act.  They've

21    got to make it so that people can drink safe

22    water.  In 2003 there was a consent order put in

23    place on that particular issue.  It's still in


                    ANNE L. SWOYER, RPR, CCR
                    OFFICIAL COURT REPORTER

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1    effect.  We are almost at 2019.

2         So, Your Honor, when we've got a release

3    that is in state court with actors saying, with

4    DNREC and Mountaire saying, oh, no, no, nothing

5    to see here, we are only resolving state court

6    claims, but you are resolving federal claims.

7    You are eliminating federal intervention and a

8    federal action.  And you are saying, Mountaire,

9    don't worry about anything that you've done in

10   the past and don't worry about anything you do

11   in the future.

12        Because if you take a look at the

13   language now in 62, Your Honor, Paragraph 62,

14   all they really have to do is try to meet the

15   standards under their permits, try to meet the

16   obligations of the regulations and try to comply

17   with the law.  And then whether it's 5 years

18   from now or whether it's another 15 years from

19   now, Mountaire, you let us know when you think

20   you've reached substantial compliance and then

21   we will let you out of this consent decree.

22        Your Honor, I have been thinking about

23   this all night.  Why in the world would DNREC

EFiled:  Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1    give that kind of release?  How can that

2    possibly protect the people that can't go to

3    their kitchen faucet and drink a glass of water

4    or open their windows when it's a nice day

5    outside?  How can that possibly protect them?

6         THE COURT:  One thing that's been

7    pointed out is that, on both sides, is that if

8    the decree were entered and approved, it should

9    be made available to the federal court.  And the

10   position taken there, that everything is moot.

11   So the federal court action, for all intents and

12   purposes, ends.

13        MR. BROCKSTEDT:  Of course.

14        THE COURT:  So that's part of what you

15   are saying.  Sure.

16        MR. BROCKSTEDT:  Of course.  We would be

17   in a different situation if they were coming

18   here and saying, oh, no, no, this is some state

19   law stuff.  We're dealing with state law issues.

20   The federal court case is going to be the

21   federal court and that's that.

22        And, Your Honor, what we really don't

23   want to have happen here is, number one, we

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

1       don't want to lose our rights.  We don't want

2       lose the ability to advocate on behalf of -- you

3       know, we represent a little bit more than 750.

4       There is probably 1,000, maybe 1,100 people that

5       are affected by this.  And we don't want to have

6       this settlement agreement, which our experts say

7       doesn't even begin to scratch the surface,

8       entered in by this court.

9               Your Honor, just quickly, and just so

10      you know, Your Honor, if there is intervention

11      in the federal court or if there is intervention

12      in this court, at some point in time someone is

13      going to have to look under the hood of this

14      consent decree, this settlement agreement, and

15      find out exactly what it is that Mountaire is

16      agreeing to do in terms of upgrading, you know,

17      changing their practices, whatever that may be,

18      Your Honor.

19              THE COURT:  Just for purposes of

20      clarification, you had, on behalf of your

21      clients, provided notice that you want to file

22      suit, citizen type suit in federal court.  And

23      then in time frame, as you term it, we had two

1    friendly suits filed by DNREC.

2         If they had not done that in the federal

3    court, then you would have been able to assert

4    private causes of action for violation under the

5    federal and environmental laws?

6         MR. BROCKSTEDT:  We would have filed

7    under federal court, that's correct, Your Honor.

8         THE COURT:  Those would have been

9    private causes of action that, even I think in

10   the state's brief here, indicate the legislation

11   would support it.  But by doing this then, you

12   essentially, from your point of view, you have

13   been blocked from this.  And this is being used

14   as subterfuge here.  You have a consent decree.

15   A federal judge is saying it's moot.  It's kind

16   of an end run around what the rights otherwise

17   would be litigating cause of action in federal

18   court; is that kind of what's going on?

19        MR. BROCKSTEDT:  That's exactly right.

20   You've got it, Your Honor.  So what I was going

21   to say -- and I don't know if we even need to go

22   down this road.

23        THE COURT:  I think it's okay to go down


                    ANNE L. SWOYER, RPR, CCR
                    OFFICIAL COURT REPORTER

1    a road.  I think it's very helpful to talk.  A

2    we're going to hear from all sides.  I just want

3    to get what your understanding is of the law

4    with respect to the court's -- let's say, for

5    purposes of talking, I saw in the opposition

6    that was filed by DNREC in the intervention in

7    federal court that it went through, toward the

8    end, they said but if intervention is permitted,

9    they ask that there be some parameters

10   established to it.

11        And I also saw that there was some

12   reference in the case law that where there has

13   been intervention, that there was no right to

14   block a settlement.  I mean, I saw those kinds

15   of words in some of the decided cases.

16        So where you have an intervention,

17   should that be the case, what is the standard

18   that a judge employs?  And is there any

19   guidance, in Delaware particularly, as to that?

20        MR. BROCKSTEDT:  That's not an issue we

21   specifically brief, Your Honor.  But my

22   understanding of the law is that the settlement

23   can't be arbitrary and capricious.  And that's

1    exactly what we have here.  And that's sort of

2    where I was going to go, Your Honor.

3           Now, our experts talked about the fact

4    that the settlement agreement that's being

5    proposed, aside from the relief and aside from

6    its effect on federal law and all this kind of

7    stuff, but, again, there will be a hearing at

8    some point in time or some inquiry as to the

9    merits of actually what's happening here.

10          And as we put in our papers, I mean,

11   this settlement agreement, it just doesn't

12   address many of the issues.

13          THE COURT:  Well, we have at least

14   three, maybe more, weren't addressed.  You

15   talked about the sludge at one point, the

16   storage for the effluent not being adequate as

17   another point.  And there are different points

18   from what is being advocated on your side of it

19   that are not even covered in the agreement at

20   all.

21          So if that's the case -- and I don't

22   know if that's the case.  We'll hear from both

23   sides.  But I'm just thinking to myself -- I'm

1   trying to get a global idea of what's going to

2   happen by decisions.  What does a judge do in a

3   settlement?  Is it arbitrary and capricious?  If

4   things aren't addressed, is that the end of it?

5   Is it kind of like, very roughly speaking, a

6   business judgement kind of thing?  People can

7   disagree about these things?  That's the kind of

8   things going through my mind.  What is the

9   measuring stick?

10          MR. BROCKSTEDT:  Your Honor, I would

11  like to have the opportunity to brief that and

12  provide the Court some specific guidance on

13  that.  I don't know if those are necessarily at

14  issue right here this morning.

15           But our understanding of the standard is

16  arbitrary and capricious.  And what I was going

17  to show Your Honor is this diagram that shows

18  well readings from plaintiff interveners'

19  clients, our clients, Your Honor, more than 750

20  people.  And this is sort of the whole zone of

21  the area.  These green areas are the sludge

22  fields.  These are the spray fields down here.

23  This is the Mountaire plant, Your Honor.

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1           And, again, I'm just using this to

2     demonstrate.  In the consent decree, the area

3     that they are talking about potentially

4     providing some alternate water supply, which --

5           THE COURT:  15 percent.

6           MR. BROCKSTEDT:  -- let's talk about

7     that for a second.

8           An alternate water supply is not putting

9     bottles of water on the front porch of these

10    people's houses.  So that needs to be said out

11    loud.  This area right here, that's the area in

12    the proposed consent decree.  These are all of

13    the people that we know are affected.  They are

14    downgrading of the sludge fields, downgrading of

15    the spray irrigation fields.

16          We've got expert opinions that aren't

17    saying that, hey, your nitrates are just high

18    because they're high.  They are high because of

19    Mountaire's practices.

20          THE COURT:  Is that roughly 15 percent

21    or something?

22          MR. BROCKSTEDT:  Something like that,

23    Your Honor.  It doesn't, the consent decree

1    doesn't even address the air emissions.  That'

2    the plant right in the middle.  The yellow

3    exceeds the state standards.  The green is

4    double the state standards.  The red is 10 times

5    the state standards, 10 times.  Not addressed at

6    all.

7            So, again, I think the next step, Your

8    Honor, if there is going to be an

9    intervention -- and, again, whether we are

10    litigating these issues in federal court or if

11    we are intervening here, the issue is going to

12    be that we are going to have to understand what

13    it is that's being resolved here.

14            Your Honor, they've come into this

15    courtroom and they are asking you to sign this

16    settlement agreement.  And the design documents

17    of what they are actually supposed to do that

18    they have been fighting tooth and nail in our

19    companion case in the class action not to

20    produce, why aren't they here?  Why isn't there

21    some expert testimony walking this court

22    through, hey, look, this is what they are

23    planning to do and here in our expert opinion on

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

 1    behalf of DNREC or Mountaire -- I mean, they a

 2    both in the same camp here -- this is how it's

 3    going to resolve the problem?

 4            I mean, how can anybody sign this

 5    settlement agreement when we don't even know

 6    what's being done?  And what we know is, we know

 7    what's not being done, what's not being

 8    addressed.

 9            THE COURT:  So maybe, in a way, there is

10    a suggestion that if there was a hearing -- and

11    I guess there will be a hearing at some point --

12    that it would be more than just looking at the

13    paperwork.

14            MR. BROCKSTEDT:  Absolutely, Your Honor.

15    I don't know how we can get by with just looking

16    at the paperwork.  We are not here complaining

17    about the paperwork.  We've got a dozen experts

18    who we've had come through this thing and sort

19    of understand the scope and the severity of the

20    contamination and provide expert opinions.

21    These aren't lawyers talking.  These are

22    experts.  These are people that are in the

23    industry.  These are credible folks that are on

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1      both sides of the litigation.  They are not fo

2      plaintiffs.  They are not for defendants.  They

3      are for environmentally responsible remedies and

4      environmentally responsible practices and

5      procedures.  That's what these folks dedicated

6      their life to.

7              THE COURT:  Well, an agency like DNREC

8      being a public agency, isn't there at least a

9      presumption that they have their own expertise

10     to bring bear on these things, and that that's

11     what they have done, and they claim they have

12     been negotiating this thing for a substantial

13     period of time and this is representative of

14     their best efforts of what can be obtained?

15             MR. BROCKSTEDT:  I mean, I guess they

16     say that.  Okay.  Where is the evidence of that?

17     Where is the proof?  I mean, you know, how is it

18     that they are going to convince this court to

19     sign the settlement agreement because what they

20     are doing is the right thing?  Because they say

21     so?

22             And, listen, nothing against DNREC.  And

23     I recognize that they are a state agency.  And I

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

1    recognize that there are funding issues and

2    staffing issues and all of the things that are

3    related to state and government, you know,

4    industry and institutions, and I get all that

5    stuff.

6            But, I mean, they don't have a great

7    history when it comes to enforcing regulations

8    against this plant.  I mean, it's 2003, 2009,

9    2010, 2017 and we've got more than a hundred

10   violations.  Now, at some point in time we've

11   got to figure out what is going to resolve this

12   and we've got to do it.

13           THE COURT:  Well, the inland bays had a

14   study that is part of the paper submission.  And

15   it referenced EPA, there was some criticism by

16   the EPA.

17           MR. BROCKSTEDT:  Sure.  That's exactly

18   right.  And, also, Your Honor, the inland bays

19   report was, you know, I think an objective

20   reading of that is it was pretty much a

21   condemnation of Mountaire's practices.

22           They talked about the fact that Swan

23   Creek and the Indian River and Indian River Bay

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1   are being polluted by Mountaire.  Nothing in t

2   consent decree that -- they reference

3   hydro-geologic connections from Mountaire to

4   those areas, but there is nothing that's going

5   to stop that at all.  So those concerns aren't

6   even addressed, same with air and the same with

7   this 15 percent business.

8         So, Your Honor, again, just to sort of

9   get back to where we are in this thing, as I was

10  driving over here this morning I'm thinking to

11  myself.  Mountaire and DNREC are coming into

12  this courtroom and they are saying this is state

13  issues.  We are not resolving federal claims.

14  Their compliant, DNREC'S complaint and the

15  settlement agreement clearly do.  Okay.

16        We are coming into this courtroom and

17  they are saying bless this settlement agreement,

18  put your rubber stamp on it despite the fact

19  that we don't have the documents and there is no

20  evidence to suggest that it's going to solve any

21  of the problems, affirmative evidence that it's

22  going to solve the problems.

23        And then on top of that on this record

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

1    you've got, from plaintiff interveners, you've

2    got a mountain -- and I know they are in your

3    office, I'm sure, sir -- you've got a mountain

4    of documents and affidavits and expert reports

5    saying this is not even a Band-Aid.

6        So, again, I go back to, how does this

7    protect our clients?  How does this protect and

8    resolve the issues for the people that DNREC is

9    supposed to protect?  Your Honor, we can go

10   through it.  We stand in Rule 24.  We have the

11   rights.  I think that's flushed out in the --

12       THE COURT:  I think they're pretty

13   adequately covered in the briefings.  Thank you,

14   sir.

15       MR. BROCKSTEDT:  Thank you, Your Honor.

16   I appreciate it.

17       THE COURT:  Good morning.

18       MR. NIDEL:  Good morning, Your Honor.

19   Chris Nidel on behalf of the Balback plaintiff

20   interveners.  I'm not going to repeat.

21   Mr. Brockstedt did, I think, a great job

22   covering many of the issues.  I just want to put

23   a finer point on a few of them.

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

 1              I think the big thing here, we filed o

 2      Notice of Intent.  We filed the first Notice of

 3      Intent.  We filed that on behalf of 45

 4      individuals, plus a nonprofit organization.

 5      This is not a repeat of the tort case.  This is

 6      an action to take care of the federal and state

 7      violations of environmental laws.

 8              So we filed that on the very day that we

 9      could then file our federal claim as a result of

10      that notice.  DNREC filed in federal court and

11      then filed in state court.  And as Your Honor

12      pointed out, it appears that that was done

13      specifically to close the door to federal court.

14              As Your Honor, I think, pointed out

15      earlier in your discussions with Mr. Brockstedt,

16      what we were going to do is we were going to

17      file our federal court claims, statutory and

18      environmental claims, along with our tort claims

19      in one court and have those all resolved in

20      federal court.

21              However, the action that DNREC took by

22      filing the case in federal court and then

23      putting a stay to that and then filing this case


                    ANNE L. SWOYER, RPR, CCR
                    OFFICIAL COURT REPORTER

1　closed the door to federal court for us.  And

2　we filed our case in state court.  We no longer

3　had federal statutory claims to hang our tort

4　claims on.  And so we pursued those claims in

5　Your Honor's court in parallel with this.

6　　　　The question that I think we have that

7　we share with the other plaintiff interveners

8　is:  What is being released?  There is

9　discussion from DNREC that says we are not

10　talking about federal claims.  In your previous

11　discussion, I think you understand that both the

12　complaint that they filed and the release or the

13　consent decree they're proposing mentions and

14　references in that Paragraph 61 that these

15　include open dumping and RCRA claims as well

16　Clean Water Act claims.

17　　　　So one of our big concerns, outside of

18　the question about which Mr. Brockstedt did a

19　very good job of addressing as far as the

20　adequacy of the substance of what they are

21　doing, is what's being released.  So are those

22　federal claims really at issue in this consent

23　decree?  They were brought in federal court.  As

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1  the parties have indicated, they plan to go ba

2  to that federal court if Your Honor is to stamp

3  this agreement and say everything has been

4  resolved. So it really appears that there are

5  federal claims at play here even if they are

6  beneath the surface.

7      So that is a concern for us. Because if

8  there are federal claims at issue here, then as

9  Your Honor pointed out, we have a right to

10  intervene. And, in fact, DNREC should not be,

11  per their agreement with the EPA, opposing our

12  intervention, which they are doing here. So you

13  have an interesting scenario where I think the

14  biggest issue for us is the ambiguity of what's

15  being resolved here.

16      The other issue that we have that really

17  forces us to come here into your court in this

18  case is that there are protections in the

19  proposed consent decree for both Mountaire and

20  for DNREC so that this doesn't create

21  third-party claims against either of them.

22      But what it does not do is it does not

23  carve out the rights of the citizens that we

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

1    represent, along with Mr. Brockstedt, to bring

2    their claims.  So it's very unclear what the

3    intention of this consent decree is and the

4    breadth of its release as far as any other

5    claims.

6        I know Mr. Brockstedt said, his words

7    were completely releases Mountaire.  And I just

8    would want to put some boundaries on that.  It

9    attempts to completely release them for these

10   administrative claims.  It does not release them

11   from liability for the tort claims and for the

12   other claims that we have brought.  But we would

13   certainly be more comfortable with language in

14   an agreement that carves out those claims and

15   says this is an administrative action related to

16   an upset.  It doesn't go back in time, and it

17   certainly doesn't have an effect on state court

18   claims that were brought by private citizens and

19   other individuals.

20       So, you know, I think there is clearly

21   an inadequacy of representation.  Rule 24

22   provides three ways that we are allowed to

23   intervene.  Number one, as Your Honor pointed

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

1    out, when there is a statute that gives you a

2    right to intervene, we should be automatically

3    allowed to intervene.

4         And if the federal court claims or the

5    federal statutory claims are at issue -- which

6    while they say they are not and it appears that

7    they are -- we should be guaranteed a right to

8    intervene.  Even under 24(a), we are also

9    guaranteed a right to intervene if our interests

10   are at stake and if the outcome could impair us

11   and if we are inadequately represented.

12        And I don't need to repeat the adequacy

13   of representation issues.  But if you look at

14   how this lawsuit started with our notice to

15   intervene on behalf of a bunch of citizens and

16   this nonprofit, the state was sitting on these

17   violations for years.  There is a record of

18   violations going back to 2003 that Mountaire has

19   not been brought into compliance and that the

20   state was sitting on.

21        So the state would be hard-pressed to

22   say that they adequately represented the

23   interests when they waited until the last day

1      that they could file a lawsuit after we notice

2      them of that intent.

3           And, finally, certainly under the

4      permissive intervention standards of 24(b), we

5      should be allowed to intervene.

6           So Your Honor asked the question about

7      what that looks like if we do intervene.  I

8      think that's a good question.  I think that this

9      court doesn't need to address that today.  But

10     the standard in federal court, under the federal

11     statutes I should say, whether it's in this

12     court or in federal court, if we are pursuing

13     the federal claims is whether there is diligent

14     prosecution.  Right?

15          And so I would assume that there would

16     be a consent decree or a proposed consent decree

17     that would come before Your Honor.  And then the

18     question would be whether that represents

19     diligent prosecution or whether that represents,

20     as Mr. Brockstedt said, proposed as a sweetheart

21     deal that is seeking a rubber stamp.

22          And so there would be a discussion about

23     whether, in fact, that represents diligent

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1    prosecution, which could, as the case

2    complexities unfold, provide an opening of the

3    door in federal court to reopen that citizen

4    suit in federal court because there lacks

5    diligent prosecution in this court.  And there

6    are a layer of complexities that would unfold at

7    that point.

8         But I think, at this point, the rule

9    makes it clear that, for today's discussion,

10   under all three of the ways that Rule 24

11   provides that both sets of plaintiff interveners

12   should be allowed to intervene in this case.

13        THE COURT:  For the lack of what you

14   phrase diligent prosecution, then the argument

15   would be the absence of some things from the

16   agreement which, from your point of view, your

17   clients' point of view, should have been

18   provided for as referenced by Mr. Brockstedt,

19   the problem with the sludge and the other

20   things?

21        MR. NIDEL:  That's correct.  And the

22   problem would be that, you know, one of the

23   problems that Mountaire and DNREC would face is

1    that if, in fact, this agreement as it stands

2    now were to be approved, both sets of plaintiff

3    interveners could go back to federal court and

4    say sure enough they have an agreement, but

5    there is no diligent prosecution and file the

6    suit that we noticed 60 days before DNREC filed

7    and pursue that in federal court, which would

8    just further complicate what the citizens and

9    the environment really need, which is

10   appropriate attention and cleanup of this issue.

11          Thank you, Your Honor.

12          THE COURT:  We'll just take a short

13   recess.

14          (Whereupon, a brief recess was taken.)

15          THE COURT:  I want to hear from counsel

16   just on the last point.  I would like some

17   clarification, please.  Yes.  Thank you.

18          Just for clarification purposes, I think

19   toward the end of your presentation, did I

20   understand the position -- or I might have

21   misunderstood it.  That's why I want some

22   clarification, please.

23          MR. NIDEL:  Sure, Your Honor.


                    ANNE L. SWOYER, RPR, CCR
                    OFFICIAL COURT REPORTER

1          THE COURT:  I've got that regardless o

2    what happened here, you would be able to still

3    go back to the federal court and state the

4    position that there was a lack of diligent

5    prosecution by the agency and still be able to

6    assert the federal claims regardless of what

7    happens here today?  Did I misunderstand that or

8    no?

9          MR. NIDEL:  What this would create is a

10   hurdle to doing that.  Now what bars claims --

11   so we noticed the claims.  We were then, after

12   the total of 60 days, able to file a federal

13   case in federal court.  What would bar the

14   federal case is if the state was already

15   diligently prosecuting it.

16          So the state would argue that this

17   agreement shows diligent prosecution.  They sued

18   them.  They sued them both in federal court.

19   They sued them in state court.  They negotiated

20   for months, as we've already heard, and they

21   reached an agreement that was the result of

22   diligent prosecution.

23          We would have to overcome that burden.


                    ANNE L. SWOYER, RPR, CCR
                    OFFICIAL COURT REPORTER

1    But that would be an argument that we could ma

2    that this agreement does not reflect the outcome

3    of diligent prosecution.  So it would be an

4    impediment.  It would not -- the argument would

5    be similar to what you've heard here, that this

6    agreement is not sufficient.  We would have the

7    additional hurdle of the court's blessing of

8    that agreement as if it were a diligent

9    prosecution.  So it would increase the burden

10   for us significantly.  But that would be the

11   argument that would have to be made in federal

12   court.

13        THE COURT:  And what effect -- would it

14   be a collateral estoppel kind of thing, I mean,

15   if the issue is actually before a judge in the

16   Superior Court?  Would that not end it?

17        MR. NIDEL:  Right.  So what Mountaire

18   and DNREC have said, particularly DNREC has said

19   is that this agreement is focused on specific

20   aspects historically rather than the whole

21   history of violations.  So there would be some

22   argument, I'm sure, from DNREC that there were

23   issues that were estopped based on what was


                    ANNE L. SWOYER, RPR, CCR
                     OFFICIAL COURT REPORTER

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1    agreed to here.  There would be issues,

2    arguments from the interveners that not all

3    issues were dealt with or addressed by that

4    agreement that the court blessed.

5         THE COURT:  So this assumes that

6    intervention was not granted?

7         MR. NIDEL:  Correct, Your Honor.  What

8    intervention would allow us to do is to flesh

9    out the substance of that so that if, in fact,

10   we are put in that position, we would have

11   greater access to voicing the substance of that

12   so that we could, if we were forced to be in

13   that position to make that argument in federal

14   court, that we could, that we would have sort of

15   the history of what happened here to then make

16   that argument in federal court.

17        So I think the first argument, Your

18   Honor, is, as we have stated from the beginning,

19   is that we should be allowed to intervene, that

20   the rule allows us to intervene.  And that after

21   participation in this case, if an agreement, as

22   you pointed out, we may not have the ability to

23   completely shut down an agreement even if we

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

1    participate.

2         So if that agreement does not reflect

3    diligent prosecution, we then have some option,

4    all be it with a hurdle, to argue in federal

5    court that we maintain a right to pursue those

6    claims because they weren't diligently

7    prosecuted in the state court.

8         THE COURT:  If an agreement can't be

9    blocked, does the court nonetheless have the

10   authority to disapprove it or no?  Again, what

11   are the parameters?

12        MR. NIDEL:  The court has the authority

13   to approve or disapprove.  The additional

14   benefit of the plaintiff interveners is that we

15   then have, as Mr. Brockstedt has already

16   presented to the Court, the ability to raise our

17   voices to the court to show how this is not

18   adequately protecting the environment and the

19   citizens that are impacted.

20        So allowing intervention would at least

21   give us that voice to the court's ear so that

22   the court would be moved to approve an agreement

23   that does, in fact, protect both the environment

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

1    and the laws and the citizens.

2            THE COURT:  I appreciate the

3    clarification.

4            MR. NIDEL:  Thank you, Your Honor.

5            THE COURT:  And, Mr. Brockstedt,

6    anything you would like to say as to that point?

7            MR. BROCKSTEDT:  None, Your Honor.

8            THE COURT:  Thank you.  We will hear

9    from the state.

10           MS. SCOTT:  Good morning, Your Honor.

11           THE COURT:  How are you?  Good to see

12   you.

13           MS. SCOTT:  Good to see you.  Devera

14   Scott, Deputy Attorney General, the Department

15   of Justice.  I represent DNREC.  With me here

16   today is my co-counsel, William Kassab, and the

17   Deputy Cabinet Secretary, Lisa Borin Ogden.

18           THE COURT:  Good to see you.  You can

19   even come forward if you'd like.

20           MS. BORIN OGDEN:  Thank you, Your Honor.

21           THE COURT:  Just like church.  Nobody

22   wants to be --

23           MS. SCOTT:  May it please the Court, I

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1    would just like to dispel some misunderstanding

2    about DNREC's intent for entering into this

3    consent decree.  There has been some allegations

4    that there was subterfuge and intention to

5    prevent the third parties from pursuing their

6    claims.

7          DNREC's purpose for entering the consent

8    decree was not to impede third parties' ability

9    to litigate their damage claims.  The purpose

10   was straight forward.  And it was to meet the

11   intent of Chapter 60.

12         The scope of this action and the consent

13   decree is state law and the state permit

14   violations that led to and were caused by the

15   upset at Mountaire's wastewater treatment

16   facility's catastrophic failure in September of

17   2017.  Third parties' lawsuit, on the other

18   hand, goes back many, many years, if not

19   decades, to address issues related to

20   groundwater contamination.

21         I don't want to argue the merits of the

22   consent decree, but I would like to explain the

23   purpose or reasoning behind using a consent

1    decree as an enforcement tool.

2         The General Assembly invested the

3    Secretary of DNREC with many tools, enforcement

4    tools in order to complete its mission to

5    protect the environment.  The secretary can seek

6    voluntary compliance, conciliation order,

7    administrative penalty, a civil penalty, which

8    would be pursued in this court, cease and desist

9    order, equitable relief in the Court of

10   Chancery, or even seek criminal penalties.

11        In this case, the DNREC secretary opted

12   to use a consent decree as his tool to resolve

13   the permit violations, the violations of state

14   law, state regulations that led to that 2017

15   catastrophic upset.

16        THE COURT:  What standard would a judge

17   employ with respect to the consent decree?

18   What's your understanding?  What standard would

19   a judge apply?

20        MS. SCOTT:  An action of the secretary

21   under Chapter 60 is whether the evidence before

22   the secretary supported that decision.

23        THE COURT:  So when it comes to a judge

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

1    to take a look at it, is it anything more than

2    paper exercise?  Or what's the measuring stick?

3    Is there more to it than that?

4         I mean, one side suggested that it was

5    arbitrary and capricious.  The same side, from

6    elaborating on that, said whether there was

7    diligent prosecution.

8         MS. SCOTT:  Well, there is a little

9    misunderstanding, too, about what the consent

10   decree provides.  It doesn't wrap up the

11   violations in a package and resolve them.  It's

12   a starting point.

13        What this consent decree provides for

14   DNREC is an opportunity to move forward, to

15   require Mountaire to upgrade its facility.

16        Since September, 2017, DNREC has spent

17   months investigating, talking to Mountaire about

18   the situation, trying to determine what the best

19   path forward was with DNREC'S experts talking to

20   Mountaire's experts.  They talk on a regular

21   basis.  And I have attended those meetings.

22        And then once those discussions realized

23   what the resolution should be, which is the

1    upgrade to the facility, then we began

2    negotiating this consent decree. And the

3    consent decree provides the upgrade to the

4    facility so that Mountaire can meet its permit

5    requirements.

6          And that construction of that facility

7    is just the start. What it requires Mountaire

8    to do is submit a permit application for the

9    construction of that facility. Under Chapter

10   60, the General Assembly has created a right for

11   the public to participate in that process, to

12   review the documents, to comment, to attend

13   public hearings and, if they have standing, even

14   to appeal to the Environmental Appeals Board.

15         The next step, once the facility is

16   constructed, would be that Mountaire would need

17   to apply for an operations permit. Again, that

18   would create another opportunity for the public

19   to participate through the normal process,

20   reviewing the documents, reviewing the

21   application, participating in hearings, and

22   commenting and providing input to the

23   department.


                    ANNE L. SWOYER, RPR, CCR
                    OFFICIAL COURT REPORTER

EFiled:  Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1          When the secretary entered into this

2    consent decree, he did so acknowledging that

3    litigation could have taken many routes.  He

4    could have taken the civil.  He could have filed

5    a lawsuit in this court seeking civil penalties

6    without a consent decree.

7          But acknowledging that litigation takes

8    many years, that the outcome of litigation is

9    uncertain, that the source of the contamination

10   in the private wells, if any, that was present

11   before the catastrophic upset will be hotly

12   contested through extensive fact and expert

13   discovery, the secretary wanted to stop the

14   permit violations.  He wanted to remediate the

15   resource, to provide the neighbors with

16   alternative drinking water supply, provide the

17   environmental beneficial offset steps, impose a

18   monetary penalty on Mountaire and, most

19   importantly, to provide the public an

20   opportunity to participate through that permit

21   process.

22          The third party not only confused

23   DNREC's purpose for entering the consent decree,

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

 1    but they also confused the underlying statutor

 2    basis for this lawsuit and the authority for the

 3    secretary to enter into the consent decree,

 4    which is Chapter 60.

 5              There is a parallel and separate federal

 6    court complaint that the parties have already

 7    discussed that allege violations of the Clean

 8    Water Act and of RCRA.  And the Cuppels movants,

 9    Mr. Brockstedt's clients, have moved to

10    intervene in that action.  And the court, the

11    federal court is the appropriate forum to

12    determine if those claims have merit and whether

13    they should be able to intervene in the federal

14    case.

15              THE COURT:  So we might as well talk

16    about that now since the subject has come up.

17    But, first of all, what is the measuring stick

18    here?  Do we know?

19              MS. SCOTT:  Well, under Chapter 60.

20              THE COURT:  You listed maybe five

21    sources in the complaint, in the moving papers

22    for the approval.

23              MS. SCOTT:  Right.  What's the authority

1    to enter the consent decree?

2         THE COURT:  No, I know there is

3    authority.  I'm asking what the measuring stick

4    of a judge is in this situation.

5         MS. SCOTT:  Whether it's arbitrary or

6    capricious or some other measure?

7         THE COURT:  That's right.

8         MS. SCOTT:  Well, under Chapter 60,

9    6008, it is whether or not the evidence before

10   the secretary supports the decision to enter.

11        The secretary also has the authority

12   under Chapter 80 as well to enter into

13   contracts.  But we would argue whether or not

14   the secretary's decision is supported by the

15   evidence before him.

16        THE COURT:  All right.  I understand

17   that's your argument.

18        Now, the other aspect before we -- well,

19   we've talked about intervention.  Certainly

20   under the Clean Water Act and the other act

21   that's in issue seems to provide for an absolute

22   right for intervention.

23        MS. SCOTT:  I don't know that the

1    movants have an absolute right in federal cour

2    The statute talks about the right to intervene

3    to enforce the law, not to pursue private

4    claims.  But --

5              THE COURT:  Doesn't it give a right of

6    intervention?

7              MS. SCOTT:  They can petition to

8    intervene.

9              THE COURT:  There is a difference

10   between can petition and actually come in, be

11   allowed to come in.  When it says you have a

12   right to come in, how can a judge say you can't

13   come in?

14             MS. SCOTT:  The judge can determine

15   whether or not to allow the parties to intervene

16   and the scope of that intervention.

17             THE COURT:  It's certainly the scope.  I

18   saw that in play in the papers that were filed

19   in the federal case by DNREC.

20             MS. SCOTT:  There is a private right of

21   action in the federal laws that does not exist

22   here.

23             THE COURT:  Right.

1          MS. SCOTT:  So they can certainly purs

2     their intervention in federal court to address

3     those Clean Water Acts and RCRA claims.

4          THE COURT:  So why is the department

5     opposing in the federal case?  It's hard, on the

6     face of it, to understand that.  And there may

7     be good reasons.  I'm just looking at it

8     superficially, of course.

9          MS. SCOTT:  The department's purpose in

10     entering the consent decree, was, again, to

11     address the violations of the September, 2017,

12     catastrophic system failure that were caused by

13     these permit violations.

14          So to the extent that we've got state

15     law claims, state permit violations, and clean

16     water and RCRA possible claims as well, it just

17     gives us, too, a path forward for us to address

18     those claims, to keep Mountaire's feet to the

19     fire, so to speak, so that the remediation, so

20     that the measures that we've laid out in the

21     consent decree can be enforced.  Covering all

22     the bases so to speak.

23          THE COURT:  Well, how does not allowing

1    the intervention in the federal court -- the

2    statute seems to say they have that right.  How

3    does that help that forward?

4         MS. SCOTT:  We feel this consent decree

5    addresses the scope that we are trying to

6    resolve, which are those violations that led to

7    the 2017 upset.  We are not looking to expand --

8    this consent decree does not expand the scope to

9    go back decades when Townsend Brothers owned the

10   property.  We want to provide a remedy as soon

11   as possible to the residents and to preserve the

12   resource.

13        THE COURT:  In the papers that were

14   filed -- and it might have been on the replies

15   and it might have been from Mr. Brockstedt's

16   side of it -- there was an extract taken

17   explaining the role of DNREC and exercising

18   enforcement of matters which have been delegated

19   to DNREC by the Clear Water Act and RCRA.  There

20   is language in there, but it also talks about

21   the citizens have a right to intervene.

22        So if citizens have a right to intervene

23   and Rule 24(a) says that's one of the ways you

1    come in, if the statute grants a right to

2    intervene, what is the basis for the opposition

3    on that?

4          MS. SCOTT:  Again, Your Honor, it's just

5    so that the consent decree -- so that DNREC has

6    the ability to enforce the consent decree so

7    they can get these measures started, the

8    provisions for not only the system upgrade but

9    for the alternative water supply, which are not

10   just bottles of water on the steps of the

11   neighbors, but to start a process in the PSC for

12   the CN process whereby the residents will have

13   the opportunity, if they wish, to be hooked up

14   to public water, which Mountaire is required to

15   pay for those connections.

16         So, of course, if the federal judge

17   allows those parties to intervene, then we will

18   proceed with that matter and participate in it.

19   But for this matter, which is the state law,

20   state regulation, state permit violations --

21         THE COURT:  Well, what's been presented

22   in the papers, in the replies, is that, even on

23   the state's side of it, there's at least a

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

1      representation made that says that citizens ma

2      intervene.  Are you familiar with the reference

3      in the papers?

4          MS. SCOTT:  Yes.

5          THE COURT:  So it doesn't seem to be

6      ambiguous.

7          MS. SCOTT:  You are talking about under

8      Rule 24?

9          THE COURT:  Yes, 24(a).

10         MS. SCOTT:  Right.  Well, unlike the

11     federal laws, there is no private right of

12     action.

13         THE COURT:  I understand that.  But I

14     mean, the argument is that they want to -- we've

15     heard all the arguments.  There is so many

16     arguments.  But what you're saying, the fact

17     that it would be frustrating to DNREC and

18     against the public interest to allow an

19     intervention because it gets in the way of the

20     enforcement of the environmental laws.

21         And you have a situation where you made

22     what you want to say is a discrete settlement of

23     the upset and turn everything upside-down if

1    people come in, in so many words.

2         MS. SCOTT:  There is a public policy

3    argument, Your Honor.  The General Assembly

4    vested the secretary with these tools to enforce

5    Chapter 60.  If third parties were permitted to

6    have a seat at the table during settlement

7    negotiations, DNREC could not function

8    efficiently.  It would encroach on their

9    statutory authority.  But it would also impose

10   on the administrative and judicial economy.

11        Because the reality is that if DNREC had

12   to allow citizens to sit at the table when they

13   are negotiating voluntary compliance or

14   conciliation, then DNREC will just opt to use

15   the other tools.

16        THE COURT:  Sure.

17        MS. SCOTT:  Which will be a secretary's

18   order, administrative penalty order, civil

19   penalties, which necessarily would involve the

20   Environmental Appeals Board, this court, Supreme

21   Court, Court of Chancery.

22        And I think there are also unintended

23   consequences that I would like to point out.  By

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1    creating a right of action for citizens where

2    there is none created by statute, it not only

3    affects DNREC in this case.  It affects DNREC

4    going forward and other state agencies.

5         THE COURT:  So you are saying because

6    there is no private right of action -- it's

7    purely federal -- there is absolutely no room

8    for intervention by these applicants and,

9    essentially, the state proceed.

10        MS. SCOTT:  Only not under Chapter 60,

11   no, Your Honor.

12        THE COURT:  Is there any other basis?

13        MS. SCOTT:  Is there any other basis for

14   them to intervene here?

15        THE COURT:  Yes.

16        MS. SCOTT:  There is certainly not a

17   statute that confers that right.  They argue

18   whether or not there is a right to intervene --

19   they have no right to intervene under Rule

20   24(a).  The two prongs being the private right

21   of action, which doesn't exist here, and whether

22   their interests are impeded or impaired by the

23   consent decree.


ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

1          Again, the Clean Water, the RCRA claim

2     they are free to pursue in federal court.  The

3     federal judge doesn't have the consent decree,

4     hasn't approved the consent decree.  And

5     certainly that judge can determine whether or

6     not to accept it.  It's a separate track.

7          They also have tort claims that are

8     separate and distinct from these permit

9     violations.  So their interest in pursuing those

10    tort claims are not impeded by this state case.

11         Whether there is permissive

12    intervention, again, we disagree.  There is no

13    private right of action.  And there are no

14    common questions of law or fact.  The law is

15    different.  They are seeking common law tort

16    claims.  And we are pursuing statutory permit

17    violations.  The facts are different.

18         In order to establish their court

19    claims, they have to show damages to their

20    health, to their property.  Whereas here, the

21    permit violations are just dependent on the

22    permits themselves and whether or not Mountaire

23    violated them.  So the law is different.  The

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1    facts are different.

2          It would also create undue delay. We

3    are already -- five months have passed since the

4    complaint was filed. Fourteen months have

5    passed since the catastrophic upset. And every

6    day that passes, DNREC doesn't have the ability,

7    under the consent decree, to require Mountaire

8    to do what they promised to do, which is to

9    build an upgraded facility, to provide the

10   alternative water supply.

11         The upgrade to the facility will also

12   remediate the resource. So every day that

13   passes, DNREC doesn't have that ability to

14   require them to comply with what they promised

15   to do.

16         So our position is, again, Your Honor,

17   that there is no expressed or implied right

18   under Rule 24 for the state law claims here.

19         THE COURT: Just for the record, the

20   reference was in the intervener's reply brief,

21   Mr. Brockstedt's side. He has an exhibit that

22   was attached. And it was Department of Natural

23   Resources and Environmental Control, A Program


              ANNE L. SWOYER, RPR, CCR
                OFFICIAL COURT REPORTER

1    Description.  And at Page 3 of that --

2         MS. SCOTT:  Which exhibit was that, Your

3    Honor?

4         THE COURT:  It's attached to his reply,

5    the program description.  That says September

6    10, 2018.

7         MS. SCOTT:  Solid and hazardous waste

8    management?

9         THE COURT:  Well, on Page 3 is says F,

10   as in Francis, adequate enforcement.  Do you see

11   that?

12        MS. SCOTT:  Yes.

13        THE COURT:  And it has this language:

14   Delaware also provides for public participation

15   in the enforcement process by allowing

16   intervention as a right in any civil or

17   administrative action as well as citizen suits

18   consistent with RCRA Section 7002.

19        So how is it then that these applicants

20   don't have a right in the sense of Rule 24(a)

21   for a basis to come in here?

22        MS. SCOTT:  Well, this is under RCRA.

23   It's in the federal court.

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1          THE COURT:  It also says Delaware.

2          MS. SCOTT:  Consistent with RCRA.

3          THE COURT:  It says Delaware also

4     provides.

5          MS. SCOTT:  Delaware also provides for

6     public participation in the enforcement process

7     by allowing intervention as a right in any civil

8     or administrative action consistent with RCRA.

9          Our position is that these aren't RCRA

10    claims.  These are permit violations issued

11    under the division of water versus -- this

12    program description describes the solid and

13    hazardous waste management section.  The permits

14    were issued by the division of water, not by

15    solid and hazardous waste.  The regulations at

16    issue are division of water regulations, not

17    RCRA.  It's not under RCRA.

18         THE COURT:  All right.  So you have a

19    land permit?

20         MS. SCOTT:  We have land application

21    permits.  Again, that's the surface water

22    discharge section of the division of water.  We

23    have spray irrigation permits, which are the


                    ANNE L. SWOYER, RPR, CCR
                     OFFICIAL COURT REPORTER

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1    groundwater section of the division of water.

2    Those are the permits that are at issue in the

3    complaint here in Superior Court.

4         THE COURT:  Okay.

5         MS. SCOTT:  Those permits are not under

6    a regulation or a law that relates to RCRA.

7         THE COURT:  Okay.

8         MS. SCOTT:  Well, I don't -- I think the

9    parties have already discussed -- we talked

10   about Rule 24.  If Your Honor has any other

11   questions.

12        THE COURT:  No.  The briefing is pretty

13   thorough on all that.  Well, it's a very nice,

14   well done briefing by all.

15        So the argument and the applicants are

16   saying that there was a requirement that notice

17   be given before even the suit was filed here and

18   an opportunity to be heard.  Is that not

19   required or what's the position on that?

20        MS. SCOTT:  Our position is that here in

21   Superior Court under Chapter 60, that notice

22   requirement is not provided.

23        THE COURT:  I don't think they were

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1    referring to how you proceed in the Superior

2    Court to provide prior notice. I think they

3    were referring to before a settlement agreement

4    is entered. Even before it gets to the Superior

5    Court that there was an obligation for notice

6    and a prior opportunity to be heard. There's a

7    reference. Is that --

8        MS. SCOTT: They do argue that under the

9    Clean Water and under RCRA. And certainly the

10   federal judge will consider whether or not that

11   obligation was met by DNREC or not. We feel

12   that the General Assembly has created -- there

13   is no private right of action under Chapter 60,

14   but they have created an opportunity for public

15   participation in the permit process.

16        THE COURT: But that comes at the end.

17        MS. SCOTT: It comes not at the end but

18   sort of --

19        THE COURT: Well, close to the end. I

20   mean, it would be after there had been approval

21   given and you go out to try to implement.

22        MS. SCOTT: Well, what would happen next

23   under the consent decree, within days of

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1    entering the consent decree, Mountaire would

2    have to submit their construction permit

3    application.  So it's pretty -- it comes very

4    close to the entry.

5            However, this court obviously retains

6    jurisdiction over the consent decree so that it

7    can monitor whether Mountaire is complying with

8    that consent decree.  There will be a

9    construction permit application.  There will be

10   an operations permit application.  They have to

11   apply to the PSC for that CPCN process.

12           So, in our mind, it's a start of a much

13   bigger process.  And construction of that

14   upgrade is supposed to take 18 to 24 months.  So

15   it's really to start.  And we are anxious for

16   Mountaire to start that so that it can have that

17   upgraded facility, provide the remediation, the

18   pump and treat system that we feel will

19   adequately address --

20           THE COURT:  You say in part that this is

21   more or less a focused enforcement on what you

22   characterize as the upset.

23           MS. SCOTT:  Yes.  And I was thinking

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1    when Mr. Brockstedt -- he said that since 2003

2    Mountaire has been under a consent decree with

3    EPA -- and that is true -- for violating the

4    Safe Drinking Water Act.

5          So 15 years ago EPA was involved.  That

6    wasn't a DNREC action.  That was an EPA consent

7    decree.  So I'm wondering, if the wells were

8    allegedly contaminated since 2003, why they

9    haven't petitioned EPA or sought some

10    intervention in that consent decree under the

11    Safe Drinking Water Act.

12          Yes, this consent decree is focused on

13    the 2017, September, 2017, catastrophic upset

14    which was caused by the permit violations, the

15    state permit violations.

16          THE COURT:  How did that upset come to

17    play?  Was it a culmination over a period of

18    time, I mean, as opposed to just one unexpected

19    event?

20          MS. SCOTT:  I guess sort of the straw

21    that broke the camel's back was that solids

22    built up in lagoons that caused the system to

23    fail.


                    ANNE L. SWOYER, RPR, CCR
                    OFFICIAL COURT REPORTER

 1          THE COURT:  One of the arguments --

 2     there are so many arguments.  One of the

 3     arguments is that there has been no provision

 4     for the lagoons and they are leaking and this,

 5     that and the other thing, no provision for

 6     storage.  I mean, there are a lot of arguments

 7     and, of course, their argument to follow and

 8     there should have been, at least have some back

 9     and forth with people.  And they have these

10     experts.  It might have been very helpful.

11          MS. SCOTT:  I'm sure that they've hired

12     excellent experts.  Again, our focus was on

13     remediating, stopping the permit violations,

14     providing interim measures so that we could get

15     to the upgrade of the facility.

16          And we have been monitoring that and

17     Mountaire has made strides.  And the consent

18     decree also provides a means for DNREC to ensure

19     that those interim measures are met through

20     stipulated penalties.

21          But, at this point, our hands are tied.

22     We are in this situation, this sort of donut

23     hole where we have a consent decree.  We have an

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1    agreement.  We have a path forward that we thi

2    is good for the resource, for the neighbors, but

3    we don't have the ability to enforce it or to

4    require Mountaire to start that process.

5           THE COURT:  All right.  So there is a

6    provision in Paragraph 51.  Is one way to read

7    that release provision, isn't that more broader

8    than just looking at a discrete incident?

9           MS. SCOTT:  That release, as I recall,

10   there was an understanding that Mountaire,

11   during the interim period, the time of upset

12   until the facility is completed, that they will

13   not be able to meet the 15.6 milligrams per

14   liter total nitrogen permit requirement.

15          So the purpose of that language was to

16   acknowledge that DNREC isn't going to sort of

17   pile on during the interim measures, during that

18   interim period, and so that Mountaire can move

19   forward, get the construction done but, at the

20   same time, work to bring those numbers down.

21          So that was the intent of that release

22   language where it talks to past or -- it really

23   speaks to sort of that gap period between the

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

1    upset and when the system is finally online.

2            THE COURT:  There seems to be a wide

3    variation in the costs in so far as the

4    estimates between what it would take to get

5    things done.  That just may be the nature of how

6    much is thought to be required or whatever.

7            MS. SCOTT:  I've heard numbers.  I've

8    heard 23 million.  I don't know exactly how much

9    it will cost for Mountaire to do their upgrade.

10   It will be in the tens of millions of dollars.

11           THE COURT:  There was a reference to a

12   stay I heard earlier.  What is the position, if

13   you have a position, on that?

14           MS. SCOTT:  Our position is that a stay

15   will only unduly delay the facility upgrade.

16           THE COURT:  Because that would be like a

17   stalemate?

18           MS. SCOTT:  Yes, yes.  And there was

19   also some discussion of the scope of the

20   intervention in that maybe at some point later

21   the court can decide how the interveners can

22   participate.  They wanted to defer that decision

23   to later.


                    ANNE L. SWOYER, RPR, CCR
                    OFFICIAL COURT REPORTER

1          But our position is deferring, allowin

2     the interveners the opportunity to possibly have

3     a limited scope, again, it just delays.  It

4     delays the upgrade, the remediation, the

5     alternative water supply for those folks.

6          So we would be opposed to a stay or a

7     limited intervention.  We request Your Honor

8     that you enter the consent decree so that DNREC

9     can move forward and enforce the consent decree.

10         THE COURT:  Even enter it without some

11    kind of hearing?

12         MS. SCOTT:  Yes, Your Honor.  Going to

13    the merits of the consent decree --

14         THE COURT:  What's the reason DNREC

15    requests approval?  If we don't have a hearing

16    process, does it make any sense?

17         MS. SCOTT:  DNREC is tasked with

18    enforcing Chapter 60.  They do have the

19    expertise, as acknowledged by the General

20    Assembly, to formulate a consent decree or a

21    path forward.  And DNREC would request that Your

22    Honor acknowledge or defer to DNREC's expertise

23    that this consent decree for the limited purpose

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

 1    of resolving the 2017 catastrophic upset --

 2          THE COURT:  Part of what you seem to be

 3    saying is that this is part of a toolbox of

 4    things available to the secretary to have a

 5    consent decree.

 6          MS. SCOTT:  Yes, Your Honor.  Yes.  And

 7    the reason that we filed it in Superior Court as

 8    a consent decree is to have that added layer so

 9    that, Your Honor, you know, if Mountaire doesn't

10    comply, doesn't do what they promised to do,

11    that we can come back to Your Honor and seek a

12    remedy.

13          THE COURT:  All right.  What additional

14    remedies would you seek?

15          MS. SCOTT:  That the consent decree be

16    enforced.  If they are not timely applying for

17    permit applications or timely applying for the

18    alternative water supply or doing all the things

19    that are required by the consent decree, that

20    they are in violations of a court order.

21          THE COURT:  A contempt?

22          MS. SCOTT:  Yes, Your Honor.  They would

23    be in contempt of a court order.


                    ANNE L. SWOYER, RPR, CCR
                    OFFICIAL COURT REPORTER

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1          THE COURT:  Is there anything else?

2          MS. SCOTT:  No, Your Honor.

3          THE COURT:  Thank you.

4          Good morning.  How are you, sir?

5          MR. ARRINGTON:  Good morning, Your

6     Honor.  Michael Arrington with Parkowski, Guerke

7     & Swayze for the defendant, Mountaire.

8          Your Honor needs to look at what this

9     complaint is.  It is 15 counts that seek civil

10    penalties and enforcement of state laws.  What

11    we have just heard from my friends on the

12    plaintiffs' side or the interveners' side,

13    proposed interveners, is that they want not one

14    bite, not two bites but three bites at the apple

15    in this case to present their class action suit

16    in Mr. Brockstedt's case for all the harms that

17    Mountaire supposedly has done.  Believe me, you

18    will hear those when that class action suit

19    comes.

20         THE COURT:  It's over a hundred pages.

21    I looked at it.  And your arguments now are

22    still being briefed.  We are into class action

23    objections and all that.  I looked at that and I

1    looked at the other complaints involved too.

2         MR. ARRINGTON:  Our case for Mr. Nidel

3    and Mr. Crumplar is a little bit more discreet.

4    And I appreciate their argument.  But both of

5    them said the same thing to you today, which is

6    we can bring these cases in federal court.  Not

7    can they bring them in federal; they have to

8    bring them in federal court.  Because the

9    federal statute and the third circuit says these

10   cases are within the exclusive jurisdiction of

11   the federal court.  They are not in the DNREC

12   complaint.

13        Mr. Brockstedt has two complaints filed

14   in as exhibits to his motions to intervene.  The

15   only difference between the two of them is he

16   leaves out in the state court that the federal

17   court has exclusive jurisdiction.  So there is

18   no question this could be disposed of very

19   easily by the court saying --

20        THE COURT:  Well, let's assume for

21   purposes of talking that you're right.  Okay.

22   Why is it the rule then is so narrowly read

23   where it would preclude a situation where

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

**EFiled: Dec 06 2018 02:14PM EST**
**Transaction ID 62733296**
**Case No. S18M-06-002 RFS**

1   people's interests, arguably, are being

2   implicated in the federal court by actions in

3   the state venue where, if the order was

4   approved, it would be filed in the federal court

5   and the argument would be presented to a federal

6   judge and all that's off and it's moot?

7        MR. ARRINGTON:  No, it will be presented

8   to federal court because that's their motion to

9   intervene.  The briefing is done in that case

10  and our arguments are in front of Judge Noreika

11  who will make her decision and, I assume, will

12  schedule oral argument in that case.

13       THE COURT:  Well, what's in the papers

14  is that if the settlement agreement is approved

15  or the consent decree is entered here, that will

16  be presented to a federal judge, and the federal

17  judge will then be persuaded to say everything

18  is moot.

19       MR. ARRINGTON:  We certainly hope the

20  judge will.  We don't know what that judge will

21  do.  And it's not his court's purview to guess

22  what the federal court might do.

23       THE COURT:  Well, is it guessing or is

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1    it just saying under the rule there is

2    consequences and that there is an interest and,

3    perhaps, that's something that can be heard?

4        In other words, why is Rule 24 so

5    narrowly construed as to preclude any

6    consideration of that?  I'm not saying there

7    will be.  But it seems to be the argument that's

8    being made.

9        MR. ARRINGTON:  Well, the state court,

10   Rule 24, the argument Mr. Nidel made is the

11   correct one on that for us we think, which is

12   that there is no conditional or unconditional

13   rights.  The first part of each of those rules

14   is out.

15       The second one, you have to look at what

16   the language says.  And it says that they are

17   dealing with an interest in the specific action.

18   It's not any interest they might have.  Everyone

19   in the State of Delaware has an interest in

20   clean water.  Everyone in Delaware has an

21   interest in RCRA.  Neither of those are in this

22   complaint.  This complaint deals with

23   enforcement of state penalties against

1    Mountaire, which has conceded as part of this

2    whole process that there has been a violation

3    related to the upsets.

4         And if Your Honor focuses on what this

5    complaint is in, it will be clear to you that

6    you can't grant intervention because there is no

7    statutory right for them.

8         THE COURT:  Never tell a judge a judge

9    can't do something.

10        MR. ARRINGTON:  I can argue it, Your

11   Honor.

12        THE COURT:  Never say never.  I'm not

13   saying that's how it's going to work out, but

14   never say never.  I have got in trouble many

15   times in my life when saying never.

16        MR. ARRINGTON:  The Court should not

17   grant intervention in this case.  Because there

18   is no right to intervene in this statute in this

19   particular case.

20        Come the federal case, it's a different

21   issue because they raised their RCRA and they

22   raised their Clean Water Act, which is, in this

23   case, in the federal court.  And in federal

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1    court, they will get their chance to raise thi

2    But that's not today.

3           Is there any other questions Your Honor

4    has?

5           THE COURT:  No.  I think the briefing

6    has been excellent, and the presentations have

7    been excellent too.

8           MR. BROCKSTEDT:  Thank you, Your Honor.

9    Chase Brockstedt.  I will do my best to be

10   brief.  And I appreciate the fact that the Court

11   has read all the papers very well.

12          It's been interesting what has been

13   argued in the papers and what you did not hear

14   today, Your Honor, and also what you did hear.

15          Mr. Arrington -- I will pick up where we

16   left off.  Mr. Arrington said three times on the

17   record, you need to focus on the complaint.

18   Mountaire and DNREC are not coming here asking

19   you to sign the complaint.  You need to focus on

20   what it is they are asking you to sign, which

21   they are asking you to sign a settlement

22   agreement which disposes of the federal claims.

23          Don't take my word for it.


                    ANNE L. SWOYER, RPR, CCR
                    OFFICIAL COURT REPORTER

1    Mr. Arrington's exact quote when you asked what

2    was going to happen up there, we hope the judge

3    there will say they are moot.  This is an end

4    run around the process, Your Honor.

5         You also haven't heard a single argument

6    as to inadequate representation, as to how DNREC

7    is representing the interests of the thousand

8    people or so that are affected by this between

9    Mr. Nidel's clients and our clients.

10         You almost have to go back to a balance

11    of the scales, Your Honor.  What's the downside

12    of not letting us into this case and having a

13    voice versus the downside of keeping us out?

14    Well, we've got a complaint that alleges federal

15    claims and a release that resolves them; yet

16    we've got arguments that this is limited to a 27

17    upset only involving state claims.

18         We've got a consent decree, which

19    according to leading experts in the country,

20    touches on a fraction of the problems here.

21    Ms. Scott argued that there is, oh, there is

22    this public process.  There will be construction

23    permits.  There will be operational permits.

1    And they can have their time to intervene or t

2    provide public comment then.

3           Your Honor, they are coming to this

4    court asking you to resolve and settle an

5    enforcement action.  In addition to the section

6    that you pointed out, Your Honor, which is an

7    exhibit to our reply brief -- and I completely

8    disagree with what Ms. Scott represented to the

9    Court.

10          Delaware, quote, Delaware also provides

11   for public participation in the enforcement

12   process by allowing intervention as a right in

13   any civil or administrative action, as well as

14   citizen suits consistent with RCRA, not limited

15   to citizen suits from RCRA.

16          Your Honor, the regulations from the

17   Code of Federal Regulations that we cited in our

18   papers -- again, I know that you've read them,

19   but I'm going to repeat them for the record,

20   Your Honor.  40 CFR, Section 123.27.  This is

21   related to enforcement authority for water

22   programs.  It requires, quote, published notice

23   of and provide at least 30 days for public

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1    comment on any proposed settlement of a state

2    enforcement action, not a construction permit,

3    not an operational permit.

4         40 Code of Federal Regulations 239.9

5    with regard to open dumping, quote, provide

6    notice and opportunity for public involvement in

7    all proposed settlements of civil enforcement

8    actions.  We are not talking about a

9    construction permit.  We are not talking about

10   an operational permit.

11        40 Code of Federal Regulations 27.16 as

12   it relates to the enforcement authority for

13   solid wastes, quote, published notice of and

14   provide at least 30 days for public comment on

15   all proposed settlements of civil enforcement

16   actions.  These also require them not to oppose

17   intervention.  So to get up here and to say

18   that, oh, there is a process, there is a time

19   for notice and comment is just completely false,

20   Your Honor.

21        The scope of the settlement is not state

22   law.  I appreciate the representations that are

23   being made today.  I take Ms. Scott at her word

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

 1    that that's what was intended.  You just have

 2    read the document.  That's not at all what it is

 3    doing.

 4            We heard that there were these meetings

 5    with Mountaire and their experts and our experts

 6    and all these folks were getting together.  How

 7    come we can't be a part of that process?  How

 8    come we can't be let in?  Please, let us into

 9    this case, Your Honor.

10            In plaintiff interveners' papers we

11    don't reference our tort case, which is a class

12    action case, whatever you want to call it, Your

13    Honor.  We don't reference that in our papers.

14    When I stood up here today, I didn't talk about

15    it one time.  It's all that they want to talk

16    about.

17            But let me tell you what the effect of

18    this can be.  Just like Mr. Arrington said, that

19    walking into the federal court with this court's

20    order approving this settlement agreement making

21    it a court order hopefully will moot that case

22    there.  You can bet your bottom dollar they are

23    going to walk into the class action case at some

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1    point in time and they are going to say, Your

2    Honor, you've heard from the plaintiffs, and

3    they think that the plant needs to be

4    overhauled, and we need to have a lagoon system

5    with 90 to 120 days of a holding period, and we

6    need to have more acreage for our spray

7    irrigation or whatever it is, or we need to

8    address air.

9         What you are going to hear, Your Honor,

10   you are going to hear that DNREC is the agency

11   that is there to enforce these regulations.

12   DNREC and Mountaire have worked together to

13   craft a settlement agreement.  The court blessed

14   it.  Your Honor, we've got a court order here.

15   You can't tell us to do anything more because

16   this issue has been addressed.  That's what I

17   heard today.

18        It's not what we are arguing on papers.

19   I didn't argue it on mine.  But that's what you

20   are hearing today, Your Honor.  We hope it moots

21   the federal court case and the tort case and the

22   class action and the tort case and the tort

23   case.  That's where you are going to hear it

1    again, Your Honor.

2         They want you to sign this settlement

3    agreement.  They want you to rubber stamp it.

4    Ms. Scott talked about evidence.  The standard

5    that she was talking about is substantial

6    evidence in the record.  What is the substantial

7    evidence in the record that the consent decree

8    as written is going to solve a single problem?

9         Thank you, Your Honor.  I appreciate

10   your time today.

11        MR. NIDEL:  Your Honor, I realize it's

12   just about the witching hour for me.  Just very

13   briefly, a few quick points.

14        We've heard repeatedly from DNREC,

15   particularly, that this was focused on the

16   upset.  It's a focused enforcement, that it's

17   all about the September upset.

18        But if you read the release language,

19   that is not -- you know, my note is they sold

20   the farm.  Okay.  They gave everything to

21   Mountaire.  They gave them a release for

22   everything, including federal claims.

23        THE COURT:  Do you mind reading it into

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1    the record?

2              MR. NIDEL:  Your Honor, no problem.

3              THE COURT:  Just go a bit slowly,

4    please.

5              MR. NIDEL:  It says, "Mountaire's

6    satisfaction of its obligations under this

7    consent decree shall resolve and release

8    Mountaire of any and all liability of Mountaire

9    to DNREC for its failure in the past and for the

10   period from the entry of this consent decree

11   until the system upgrade is completed to meet

12   the effluent limitations and other conditions

13   contained in this spray permit and to satisfy

14   the compliance requirements in the land

15   application permits, including but not limited

16   to any such liability that might be imposed for

17   violations alleged in the NOV, such liability

18   that might be imposed for alleged contribution

19   to the past or present handling, storage,

20   treatment, transportation or disposal of a solid

21   waste that may present an imminent and

22   substantial endangerment to health or the

23   environment, and such liability that might be

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1    imposed as a result of alleged disposal into a

2    open dump as defined under 7 Del C, Chapter

3    6002(35) and 42 U.S.C., Section 6403(14), and

4    such liability that might be imposed as a result

5    of discharge of pollutants into waters of the

6    state and United States through surface water

7    and hydro-geologic connection of Mountaire's

8    contaminated groundwater with Swan Creek, Indian

9    River and Indian River Bay."

10        That reference is clearly both RCRA by

11   specific reference and the Clean Water Act by

12   reference to the waters of the state and of the

13   United States.

14        So what they are looking for is, as

15   Mr. Brockstedt just said, a pass to go to the

16   federal court to say those federal claims are

17   also mooted by this.  And, in fact, what DNREC

18   will be doing is selling their right to enforce

19   that.  And so Mountaire could go on its own and

20   say, federal court, DNREC can't come after us

21   here.  They have given us a free pass on these

22   federal statutes that are in your court.

23        So what's being released, that needs to

1    be what's the focus here. That's why we are

2    here and that's what our concern is and why we

3    are seeking to be involved.

4         With respect to a private right of

5    action, that's been raised in the papers.

6    That's not a requirement of Rule 24. We heard

7    counsel for the other side, both of them today,

8    raise this question of private right of action.

9    Intervention requires an interest. It requires

10   inadequate representation. That's it. There is

11   no need for a private right of action to

12   distinguish the federal claims and the state

13   claims. Here we are in state court.

14        We heard DNREC say they could have used

15   other tools, but they chose this. They chose to

16   file a lawsuit. The lawsuit in this court is

17   governed by Rule 24. We can intervene. They

18   didn't have to file a lawsuit. They could have

19   negotiated a consent decree outside. They could

20   have negotiated a deal.

21        However, they chose to file a lawsuit, I

22   would argue cynically, so that they could stop

23   the interveners from pursuing their own lawsuit

1    that we had noticed.  But even without that

2    cynical, they didn't have to take that approach.

3          The problem for us, who noticed the

4    lawsuit in its original intent, is that we are

5    now prohibited from bringing our own lawsuit.

6    So all we can do is participate in this process.

7    We have this right of intervention as the

8    exhibit from Mr. Brockstedt's briefing pointed

9    out.  The state has represented that consistent

10   with RCRA, that we should also be given an

11   automatic right of intervention in a state case.

12   That's what we are seeking here.

13         Ms. Scott brought up the right of appeal

14   after these things go down the road.  But that's

15   going to be based on the standards that are set

16   forth in this agreement that they are asking the

17   court to sign.

18         So we can appeal whether they

19   constructed something by the time that they did

20   or, you know, how high it is.  But the standard,

21   which is very ill-defined in this agreement, is

22   being set forth here.  And that's what they are

23   asking the court to order.


ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER

**EFiled: Dec 06 2018 02:14PM EST**
**Transaction ID 62733296**
**Case No. S18M-06-002 RFS**

1          And the final point that I would like

2    make just after noon here is the point raised by

3    Mr. Arrington, that he questions whether we have

4    an interest in the action.  We noticed this

5    action.  We represent people that live in the

6    middle of these spray fields.  We had a client,

7    Gina Burton, that was here this morning that

8    witnessed this upset, including the spraying of

9    guts and debris onto the land that surrounds her

10   house.

11          So clearly we have an interest in this

12   action.  There can be no question as to whether

13   we have an interest.  The only question is

14   whether we meet the other prongs of Rule 24.

15   And I think that's clear.

16          So with that, Your Honor, I thank you.

17   And I will rest.

18          THE COURT:  I want to thank you very

19   much.  I'm going to reserve decision.  I thought

20   both sides were very professional, civil.  And

21   it's a pleasure to actually be a judge to be

22   able to hear such fine presentations by both

23   sides.  Thank you very much.

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1                    (Whereupon, the proceedings in the

2       above entitled matter were concluded.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

EFiled: Dec 06 2018 02:14PM EST
Transaction ID 62733296
Case No. S18M-06-002 RFS

1 <u>C E R T I F I C A T E</u>

2 I, ANNE L. SWOYER, RPR, CCR, an Official

3 Court Reporter of the Superior Court of the

4 State of Delaware, do hereby certify the above

5 and foregoing Pages 3 to 93 to be a true and

6 accurate transcript of the proceedings therein

7 indicated on November 20, 2018, as was

8 stenographically reported by me and reduced to

9 typewriting under my direct supervision, as the

10 same remains of record in the Sussex County

11 Courthouse at Georgetown, Delaware.

12 This certification shall be considered

13 null and void if this transcript is disassembled

14 in any manner by any party without authorization

15 of the signatory below.

16

17

18 /s/Anne L. Swoyer
   Anne L. Swoyer, RPR, CCR

19

20 11/29/2018
   Date

21

22

23

ANNE L. SWOYER, RPR, CCR
OFFICIAL COURT REPORTER