IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

STATE OF DELAWARE
DEPARTMENT OF NATURAL
RESOURCES & ENVIRONMENTAL
CONTROL,

and

GARY and ANNA-MARIE CUPPELS,
individually and on behalf of others
similarly situated,

              Plaintiffs,

       v.

MOUNTAIRE FARMS OF
DELAWARE, INC.,

              Defendant.

Case No.: 1:18-cv-00838-MN

## **MOTION TO INTERVENE**

Joan and Joseph Balback, 45 similarly situated residents and property

owners, and members of Food & Water Watch ("FWW") (collectively,

"Intervenors") who rely on drinking water in the vicinity of the lands and facilities

owned and operated by Mountaire Corporation, Mountaire Farms, Inc., and

Mountaire Farms of Delaware, Inc. (collectively, "Mountaire") respectfully submit

this Motion to Intervene ("Motion") pursuant to Rule 24 of the Federal Rules of

Civil Procedure and 42 U.S.C. § 6972(b)(2)(E).

## I.   <u>INTRODUCTION</u>

Intervenors are residents and property owners in Millsboro, Delaware, who

rely on drinking water from private wells located near Mountaire's poultry

processing facilities and agricultural fields (the "facilities"). Each day, Mountaire's

facilities produce up to 2.4 million gallons of waste, which it sprays onto 928 acres

of surrounding farmland. Plaintiff, the State of Delaware's Department of Natural

Resources and Environmental Control ("DNREC"), permits this discharge

pursuant to a Spray Irrigation Permit (No. 359191-04) (the "Spray Permit") and

allows Mountaire to apply solid "sludge" waste to its fields pursuant to two land

application permits (Nos. AGU 1402-S-03 and AGU 1403-S-03) (the "Sludge

Permits"). Mountaire also maintains various solid and/or liquid waste storage

lagoons in and around the facilities.

Over the years, billions of gallons of waste have seeped through the soil and

into the groundwater surrounding Mountaire's facilities. This is no accident. Since

acquiring the facilities in 2000, Mountaire has continuously over-sprayed

wastewater onto its fields and negligently stored liquid and solid waste in leak-

prone lagoons. Once in the groundwater, these pollutants—high in nitrogen

compounds like nitrate—travel downgradient into private water wells. This

endangers the health of Intervenors, who rely on their well water for drinking, bathing, and other basic domestic needs. Indeed, chronic exposure to nitrates contributes to a variety of severe health and developmental problems. Despite the substantial health risks associated with its waste exceedances and knowing violations of its own permits, Mountaire continues to contaminate Millsboro's groundwater.

This contamination will continue until Mountaire is forced to amend its operational practices and remedy the harm already caused. For this reason, Intervenors sent a Notice of Intent[1] to sue Mountaire under two separate provisions of the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq*. ("RCRA"), on March 27, 2018. That effort was then preempted in June of 2018, when DNREC filed its complaint in this case, D.I. 1, along with a simultaneous complaint (the "state action") and Consent Decree (the "Decree") in Delaware superior court. Intervenors viewed the state action as potentially decisive of their interests, choosing to intervene first in that case. Now that the state action is stayed—for the express purpose of allowing this case to proceed—Intervenors seek to intervene in this action pursuant to their statutory rights under RCRA and Federal Rule of Civil Procedure 24 ("Rule 24").

## II.    **ARGUMENT**

---

[1] Attached hereto as Exhibit A.

**A. Intervenors have a Right to Intervene.**

Parties must be allowed to intervene where, "[o]n timely motion," they demonstrate that (1) a federal statute "unconditional[ly]" grants intervention or (2) their interest in the "subject of the action" is threatened and not "adequately represent[ed]" by the existing parties. Fed. R. Civ. P. 24(a); *see also Commonwealth of Pennsylvania v. President United States of Am.*, 888 F.3d 52, 57 (3d Cir. 2018). Unlike Rule 24(b)—which gives courts discretion over would-be intervenors with conditional statutory rights or relevant (but non-essential) interests—Rule 24(a) *requires* that courts grant timely motions setting out (1) or (2) above.

Intervenors meet Rule 24(a)'s requirements. As this Court has already recognized, Section 7002(b)(2)(E) of RCRA, 42 U.S.C. § 6972(b)(2)(E), provides the right to intervene under Rule 24(a). *See Dep't of Nat. Res. & Envtl. Control v. Mountaire Farms of Delaware, Inc.*, No. CV 18-838 (MN), 2019 WL 1333266, at *6 (D. Del. Mar. 25, 2019). Intervenors qualify for intervention under RCRA and Rule 24(a) for the same reason: they have clear interests that go to the core of this action, and disposing this action in their absence would impair Intervenors' ability to protect those interests.[2]

---

[2] Intervenors further argue—despite this Court's holding that it is **not** their burden under RCRA—that neither DNREC nor the Cuppels and more that 690 "similarly situated" intervenor-plaintiffs (collectively, "Cuppels") are adequately representing Intervenors' interests. *See* II(A)(iii), *infra*; *see also Mountaire Farms* at *6 ("[Section

### i. Intervenors have established interests in the subject of this action.

Intervenors rely on the well water downgradient from Mountaire's facilities. Resident Intervenors live and own property north of the Indian River, from a half-mile to 125 feet of Mountaire's spray fields and wastewater lagoons; FWW-member Intervenors also live and work near Mountaire's facilities. Intervenors depend on their well water's daily utility—to bathe themselves and their children, wash their dishes, brush their teeth, clean their produce, and, ultimately, to drink. Intervenors therefore share a fundamental interest in clean, potable well water—water which, at a minimum, contains non-toxic levels of nitrogen compounds.

Mountaire's conduct continues to harm that interest. Federal and state samples of Intervenors' private wells have consistently yielded nitrate levels above the federal Maximum Contaminant Level ("MCL")—in recent years up to *nine times* that value.[3] These readings are consistent with Mountaire's routine exceedances of the Spray Permit's total nitrogen and annual nutrient application limits, as well as Mountaire's own admission that millions of gallons of waste have leaked and continue to leak from its lagoons. Intervenors believe that the leaching of waste caused by Mountaire's over-spraying and leak-prone lagoons into the

---

7002(b)(2)(E)] does not fit nicely under … Rule 24(a)[] … [in part because] the burden is placed on the Administrator or State to demonstrate that intervention is not warranted or necessary.").

[3] MCLs are health-based standards set by EPA that specify contaminants known to have adverse effects on human health at certain concentrations. Human consumption of water containing more than nitrate's MCL (10mg/L) may cause a variety of severe health problems, including but not limited to methemoglobinemia ("blue baby syndrome," a potentially lethal condition that affects infants), some forms of cancer, and autoimmune system dysfunction.

groundwater—and the migration of that groundwater downgradient to Intervenors'
water wells—has contributed and is contributing to the well water nitrate
contamination that threatens Intervenors' health.

This belief led Intervenors to notify DNREC and Mountaire on March 27,
2018 of their intent to sue under RCRA's citizen suit provision, 42 U.S.C. §
6972(a)(1)(B). *See* Ex. A. Intervenors claimed that Mountaire's widespread
groundwater contamination threatened public health and the environment;
Intervenors also alleged that Mountaire was illegally operating an "open dump."[4]
*See id.* at 3.

DNREC preempted Intervenors' claims when it filed its complaint in this
case. *See* D.I. 1. The complaint uses the same citizen suit provision to prosecute
Mountaire for substantially the same conduct. *See id.* ¶¶ 31-36. This overlap—and
the real impacts Intervenors will face should DNREC fail to secure adequate
remedies—establish Intervenors' interest in the subject of this action. *See
Mountaire Farms* at *6 ("Given that Intervenors and DNREC all sought to sue
Mountaire under the same RCRA provision for substantially the same conduct
relating to the same property, it is unclear to this Court how Intervenors could not
have an interest in the subject of this action.").

---

[4] 42 U.S.C. § 6945(a). This provision is enforceable under Section 7002, 42 U.S.C. § 6972. *See id.*

ii. **Intervenors' ability to protect those interests will be
adversely affected by the disposition of this action in their
absence.**

Disposition of this action without Intervenors would cripple their ability to
protect, remedy and enforce their interests. Now that the state action is stayed,[5] this
action becomes the chief vehicle for determining Mountaire's liability—and any
remedies that might flow therefrom. A negative resolution of this action could, as a
practical matter, preclude Intervenors from pursuing their claims against
Mountaire. This is enough to warrant intervention under RCRA. *See, e.g.*, *Hudson
Riverkeeper Fund, Inc. v. Atl. Richfield Co.*, 138 F. Supp. 2d 482, 484 (S.D.N.Y.
2001) ("[S]ince a negative outcome in the instant action could preclude
[intervenor] from pursuing its own interests, it was properly granted intervention
under RCRA.").[6]

Resolution of DNREC's claims also threatens Intervenors' interests because
those claims—and the relief they seek—improperly frame Mountaire's misconduct
in terms of its recent permit violations. *See* D.I. 1 ¶¶ 11, 13 (discussing in detail

---

[5] *See Dep't of Nat. Res. & Envtl. Control v. Mountaire Farms of Delaware, Inc.*, No. CV S18M-06-002 RFS, 2019
WL 1430620, at *5 (Del. Super. Ct. Mar. 29, 2019). DNREC has since filed an application for interlocutory appeal
of the Superior Court's order, which the court denied. *See State of Delaware Dep't of Nat. Res. & Envtl. Control,
Plaintiff, v. Mountaire Farms of Delaware, Inc., Defendant,*, 2019 WL 1949722, at *2 (Del. Super. Ct. Apr. 30,
2019).). Subsequently, DNREC filed a notice of appeal in the Delaware Supreme Court. Today, the Delaware
Supreme Court issued an Order refusing to allow the interlocutory appeal. (Exhibit C).
[6] This Court cited *Hudson Riverkeeper* in support of the same proposition: that the Cuppels' ability to protect their
interests (namely, securing more comprehensive relief than they believed the Decree offered) was practically
threatened by the possibility of a negative outcome in this case. *See Mountaire Farms* at *6.

only Mountaire's 2017 violations of its Spray and Sludge Permits).[7] The Decree—

an agreement reached exclusively between DNREC and Mountaire and the entry of

which will proceed at the conclusion of this action—is similarly framed. *See* D.I. 7,

Ex. B ¶¶ 5-13, 25-27 ("[T]he Parties have agreed that … entry of this [Decree] …

is the most appropriate means of resolving any outstanding matters under the Spray

Permit and the [Sludge] Permits."). Specifically, the Decree focuses on the August

2017 "System Failure" of Mountaire's wastewater treatment facility and the permit

exceedances resulting therefrom. *Id.* ¶¶ 5-13. Its solution to this specific failure is

to require Mountaire, through various "Mitigation Measures," to "achieve[] results

that approach full compliance" with those permits. *Id.* ¶ 62.

    This myopic approach demonstrates the necessity of Intervenors'

participation in this action. There is evidence that Mountaire has been violating its

permit and polluting Millsboro's well water for almost two decades. *See* Ex. A at

3-10. Indeed, resolving RCRA violations requires a deeper dive into Mountaire's

misconduct than a year of system failures and permit violations; Section

7002(a)(1)(B) addresses ongoing patterns of behavior—pollution and

contamination that span years. Only armed with Intervenors' approach—one that

comprehensively considers Mountaire's misconduct over years of operations and

monitoring—can this Court award full relief to those most affected by that

---

[7] Despite admitting that Mountaire's exceedances stretch back into "prior years," and that downgradient wells have "demonstrated a gradual increase in nitrate levels since at least 2011," DNREC still focuses its claims on a single year of violations. D.I. 1 ¶¶ 12, 14.

misconduct. Intervenors' unique position as residents closest to Mountaire's contamination makes them best equipped to assert their interests and secure lasting relief. And since this action may represent Intervenors' only opportunity to comprehensively assert those interests against Mountaire, intervention is proper.

### iii.  Intervenors are not adequately represented by DNREC or the Cuppels.

Intervenors are not adequately represented by either DNREC or the Cuppels because their interests in this action "diverge sufficiently" from Intervenors', such that neither party can devote "proper attention" to Intervenors' interests. *United States v. Territory of Virgin Islands*, 748 F.3d 514, 520 (3d Cir. 2014) (internal quotations omitted). Showing inadequate representation is DNREC's burden under RCRA. *See Mountaire Farms* at *6 ("[Section] 6972(b)(2)(E) places the burden of showing adequate representation on the State[.]"). Intervenors believe, however, that demonstrating the inadequacy of the plaintiffs' representation further illustrates the threat this action poses to Intervenors' interests.

DNREC does not adequately represent Intervenors' interests. As discussed above, the agency's filings in this and the state action suggest a myopic approach that prevents this Court from granting comprehensive relief to all injured parties. Indeed, DNREC's complaint—which bases RCRA liability on a single year of permit violations and system failures—fails to capture the scope of Mountaire's misconduct. *See, e.g.*, D.I. 1 ¶¶ 11, 13. In doing so, DNREC also fails to set the

stage for relief designed to remedy historical and ongoing harms to those who are most proximate to Mountaire's misconduct. This represents a divergence of interests and demonstrates why DNREC—whose claims focus on a single year of violations—cannot devote proper attention to Intervenors' interest in securing lasting relief designed to address ongoing harms. This is sufficient to show inadequate representation under Rule 24(a). *See Virgin Islands*, 748 F.3d at 520.

The Cuppels similarly fail to represent Intervenors' interests. They do not include the residents living closest to the contamination; some even live south of the Indian River, "within five miles" of the facilities. Harm to their interests might therefore be remedied by injunctive or equitable relief that could leave Intervenors' water—drawn from wells within a half-mile of the facilities—contaminated. Indeed, the simple proximity between the Facility and Intervenors' (versus the Cuppels') properties means that Intervenors and the Cuppels experience Mountaire's misconduct differently. Relief from that misconduct will also be experienced differently: any agreements in this action or modifications to the Decree made by DNREC, Mountaire and the Cuppels (who, like Intervenors, moved to intervene in the state action) will have the most immediate and lasting impact on Intervenors' interests. The Cuppels' interests "diverge sufficiently" from Intervenors'; their representation in this action is therefore inadequate under Rule 24(a). *Virgin Islands*, 748 F.3d at 520.

To be sure, Intervenors' approach shares "tactical similarities" with DNREC's and the Cuppels' legal strategies. That is part of why Intervenors have established interests related to "the subject of [this] action[.]" 42 U.S.C. § 6972(b)(2)(E); Fed. R. Civ. P. 24(a)(2). But similar interests do not assure adequate representation under Rule 24. *See, e.g.*, *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 737 (D.C. Cir. 2003); *accord Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir. 1992). Even sharing the same ultimate legal objective does not render parties' interests "aligned" for purposes of "adequate representation." *Woolen v. Surtran Taxicabs, Inc.*, 684 F.2d 324, 333 (5th Cir. 1982); *see also Planned Parenthood of Minnesota, Inc. v. Citizens for Cmty. Action*, 558 F.2d 861, 870 (8th Cir. 1977). Instead, courts must compare the interests of the existing party with would-be intervenor's to determine whether the latter's interests, while not "wholly adverse," nonetheless diverge in some way from the former's. *Jansen v. City of Cincinnati*, 904 F.2d 336, 343 (6th Cir. 1990). This holds true even between would-be intervenors and *former* intervenors—like the Cuppels—whose interests might be slightly more similar to Intervenors' than DNREC's. *See, e.g., Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 913 (D.C. Cir. 1977) (finding inadequate representation because, "while the overall point of view might be shared, [intervenors' specific] interest … may not be represented by [former intervenors]"); *Fund for Animals*, 322 F.3d at 737 ("Although there may be a

partial congruence of interests, that does not guarantee the adequacy of representation.").

Here—despite the parties' mutual desire to hold Mountaire accountable for its groundwater contamination—there is substantial disagreement as to *how* to achieve that goal. Intervenors would address Millsboro's conduct comprehensively, considering years of nutrient mismanagement; DNREC prefers a single-year, permit-violation approach. Further, Intervenors and the Cuppels will likely disagree on the remedies necessary to abate well water pollution within a half-mile versus five miles of the facilities. These differences are not "wholly adverse," but indicate a sufficient divergence of interests. Intervenors should therefore be allowed to protect interests partially contemplated, but not adequately represented, by the existing parties.

Finally, neither DNREC nor the Cuppels can adequately represent Intervenors because their claims under the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*, threaten Intervenors' RCRA claims via RCRA's "solid waste" exclusion. *See* 42 U.S.C. § 6903(27) (excluding from RCRA's definition of "solid waste"—and, through it, liability under Section 7002(a)(1)(B)—any "solid or dissolved materials in irrigation return flows … which are point sources subject to [CWA] permits").

Both parties assert that Mountaire's spraying and lagoon leaks are unlawful under CWA Section 301(a) because they constitute unpermitted discharges into "navigable waters" (the Indian River and Swan Creek) from "point source[s]" (spray field runoff and the groundwater aquifers on which the facilities sit). *See* D.I. 1 ¶ 13; D.I. 4-2 ¶¶ 51, 54; *see also* 33 U.S.C. §§ 1311(a), 1342 & 1362(12). This allegation threatens Intervenors' RCRA claims because—if this Court finds that Mountaire's discharges do reach navigable waters from a "point source"— CWA jurisdiction over those discharges would exclude them from RCRA's "solid waste" definition, forcing the dismissal of Intervenors' RCRA claims. *See* 42 U.S.C. § 6903(27).

It is true that some of Mountaire's practices fall under the CWA—namely, those fields subject to its Sludge Permits. But Intervenors' RCRA claims concern groundwater contamination caused by Mountaire's *spray* field practices, not its Sludge Permit activities. And neither DNREC nor the Cuppels present sufficient evidence of any "direct hydrological connection" between the groundwater affected by Mountaire's spraying (or lagoon leaks) and the surface-level, "navigable waters" at issue in their complaints. *See* D.I. 1 ¶ 38 (asserting a "hydrological[] connect[ion]" once in its CWA claim); D.I. 4-2 ¶¶ 6, 59, 69-72 (offering only conclusory statements and circumstantial evidence of groundwater-

surface water connection).[8] Nor does either party demonstrate (or even allege) why field runoff or leaky lagoons might qualify as "point source[s]" under the CWA. *See* D.I. 1 ¶¶ 37-39; D.I. 4-2 ¶¶ 84-86. DNREC's and the Cuppels' bare assertions of a spray-based CWA claim therefore undermine the legitimacy of Intervenors' RCRA claims and further illustrate why neither party can adequately represent Intervenors' interests in this action.

### B. Intervention is Warranted even if Intervenors Lack the Right to Intervene.

Intervenors also qualify for permissive intervention under Rule 24(b). Even if this Court finds no intervention right under Rule 24(a) and RCRA Section 7002(b)(2)(E), 42 U.S.C. § 6972(b)(2)(E), it should grant Intervenors' Motion because their claims share common questions of law and fact with the claims raised in this action. Fed. R. Civ. P. 24(b)(1)(B).[9]

Intervenors' claims match DNREC's (and the Cuppels') RCRA claims and concern substantially the same conduct by Mountaire.[10] This "presence of overlapping interests" supports the argument that Intervenors' claims "share[] a

---

[8] The issue of whether point source pollution—specifically discharges that travel via groundwater before being released into an established "navigable water[]" (like a river or creek)—is "sufficiently direct" to trigger Section 301(a) coverage is currently before the Supreme Court on writ of certiorari. *See Cty. of Maui, Hawaii v. Hawaii Wildlife Fund*, 139 S. Ct. 1164 (2019).

[9] Permissive intervention would not unduly delay or prejudice adjudication of the existing parties' rights for the same reasons this Motion is timely, as explained in sections II(C)(i)-(iii) below. *See* Fed. R. Civ. P. 24(b)(3). Additionally, intervention would not cause delay because Intervenors have no "unrelated new claims" to lodge. *Acra Turf Club, LLC v. Zanzuccki*, 561 F. App'x 219, 222 (3d Cir. 2014).

[10] *See* II(A)(i), *supra*.

common question of law with the current action[.]" *King v. Christie*, 981 F. Supp.

2d 296, 309 (D.N.J. 2013), *aff'd sub nom. King v. Governor of the State of New*

*Jersey*, 767 F.3d 216 (3d Cir. 2014). Further—since Intervenors are not adequately

represented by either DNREC or the Cuppels[11]—their contributions to this action

will be unique, not "superfluous." *Hoots v. Commonwealth of Pa.*, 672 F.2d 1133,

1136 (3d Cir. 1982); *see also Acra Turf*, 561 F. App'x at 222; *PA Prison Soc. v.*

*Cortes*, 622 F.3d 215, 231-32 (3d Cir. 2010). Intervenors' participation will

expedite the resolution of all claims and allow for the achievement of full relief in

a single proceeding. This warrants permissive intervention under Rule 24(b).

### C. Intervenors' Motion is Timely.

The basic requirement of all Rule 24 motions is timeliness. *See* Fed. R. Civ.

P. 24. A court's timeliness inquiry requires a "totality of the circumstances"

exploration of three factors: (1) the stage of the proceedings at the time of filing;

(2) whether the motion's delay might prejudice the existing parties; and (3) the

movant's reason(s) for delay. *See Benjamin ex rel. Yock v. Dep't of Pub. Welfare of*

*Pennsylvania*, 701 F.3d 938, 949 (3d Cir. 2012); *Wallach v. Eaton Corp.*, 837 F.3d

356, 371 (3d Cir. 2016). Intervenors' Motion is timely because this action is still in

its early stages and because its delay is neither prejudicial nor unjustified.[12]

---

[11] *See* II(A)(iii), *supra*.

[12] Intervenors acknowledge that motions to intervene are never perfectly timed; however, they remind this Court of the serious interests at risk should Intervenors' statutorily provided right to intervene be denied. *See id.* ("There is a general reluctance to dispose of a motion to intervene as of right on untimeliness grounds because the would-be

### i. This action is still in its early stages.

Intervenors' Motion is timely in part because this action is, procedurally, just getting started. Although it has been nearly a year since DNREC filed its complaint, "[t]he mere passage of time" does not make Intervenors' Motion untimely. *Mountain Top*, 72 F.3d at 369. Instead, "the critical inquiry" is whether "proceedings of substance on the merits" have occurred. *Id.*

Here, "a substantive decision has not yet been issued"—only a complaint and non-dispositive motion practice. *Hyland v. Harrison*, No. CIV.A. 05-162-JJF, 2006 WL 288247, at *5 (D. Del. Feb. 7, 2006) (finding intervenor's motion timely despite a "fully briefed" motion to dismiss since "no final decrees or judgments ha[d] been entered on any substantive matters"); *see also MiiCs & Partners Am., Inc. v. Toshiba Corp.*, No. CV 14-803-RGA, 2016 WL 11488672, at *3 (D. Del. June 15, 2016) (finding timely intervention after almost two years of proceedings—including some discovery and trial scheduling—since the parties had yet to complete "document production, exchange expert reports, finish fact discovery, and submit dispositive motions"); *Mountain Top*, 72 F.3d at 370 (finding timely intervention despite four years of "written discovery and settlement negotiations" since "no depositions [had been] taken, no dispositive motions filed,

---

intervenor actually may be seriously harmed if not allowed to intervene."); *see also Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995) ("[C]ourts should be reluctant to dismiss a request for [Rule 24(a)] intervention as untimely, even though they might deny the request if the intervention were merely permissive.") (internal quotations omitted).

or decrees entered").[13] For this reason—stated best by this Court in its March 25, 2019 opinion granting the Cuppels' motion to intervene—"this case is at its earliest stages." *Mountaire Farms* at *7.

### ii.  Intervention will not prejudice the existing parties.

Intervention will not prejudice the existing parties. The earliness of the proceedings is relevant here, too. *See, e.g.*, *Mountain Top*, 72 F.3d at 370 ("[T]he stage of the proceeding is inherently tied to the question of prejudice[.]"). Since this Court has yet to reach a "substantive decision," neither plaintiffs nor defendant will be forced to relitigate the merits or redo any negotiations. *Hyland*, 2006 WL 288247 at *5 ("Given the early stage of this proceeding, the Court is not persuaded that the [existing plaintiffs] will be prejudiced by the intervention[.]").

Intervenors' participation might prejudice the parties insofar as it forces each to consider Intervenors' legitimate interests going forward. But this prejudice is consistent with the "fundamental principle" that injured parties, like Intervenors, have the opportunity to redress real harms to their interests—and is

not attributable to any time delay. *Mountain Top*, 72 F.3d at 370. For these reasons, intervention will not cause prejudice to the existing parties.

### iii.  Intervenors had valid reasons to delay intervention.

---

[13] Courts have also allowed limited intervention after settlement. *See, e.g.*, *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 780 (3d Cir. 1994) (allowing intervention six and one-half months after settlement) ("This relatively short delay, in itself, leads us to the conclusion that intervention should be permitted."); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (same, approximately three years after settlement).

Intervenors are justified in their delay. Intervention delays are "reason[ed]" when they occur "promptly" after would-be intervenors "learn[] that their interests [are] in jeopardy." *Mountain Top*, 72 F.3d at 370. This applies here because Intervenors reasonably believed that their rights would be impacted first by the Decree, which sought to absolve Mountaire of its RCRA liability to DNREC under Sections 7002(a)(1)(B) and 4005(a), 42 U.S.C. §§ 6972(a)(1)(B) and 6945(a). Intervenors also believed, in good faith, that the purpose of DNREC's federal complaint was procedural—to preempt Intervenors' RCRA claims in federal court while the state action and Decree moved forward.

Pursuant to those beliefs, Intervenors focused their attention on—and moved immediately to intervene in—the state action.[14] The moment that action was stayed, Intervenors began preparing this Motion for submission. Since intervention delay "should be measured from the point at which the [would-be intervenor] knew, or should have known, of the risk to its rights," this Motion's delay should be measured from the Delaware Superior Court's March 29, 2019 order[15] rather than DNREC's June 4, 2018 federal complaint. *Mountain Top* at 370; D.I. 1. Given the brief delay between that order and this Motion's filing, Intervenors' Motion is timely and should be granted.

---

[14] Ultimately, the Delaware Superior Court stayed the state action without ruling on Intervenors' (or the Cuppels') motion. *See Dep't of Nat. Res. & Envtl. Control v. Mountaire Farms of Delaware, Inc.*, No. CV S18M-06-002 RFS, 2019 WL 1430620, at *5 (Del. Super. Ct. Mar. 29, 2019)

[15] *Id.*

### D. Intervenors' Motion is Accompanied by a Complaint in
### Intervention.

Rule 24(c) requires that motions to intervene "be accompanied by a pleading that sets out the claim … for which intervention is sought." Fed. R. Civ. P. 24(c). Intervenors therefore attach to this Motion their complaint setting forth their claims under RCRA Sections 7002(a)(1)(B) and 4005(a), 42 U.S.C. §§ 6972(a)(1)(B) and 6945(a), as well as requested relief. *See* Ex. B ("Complaint in Intervention").

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Intervenors respectfully request that this Court grant its Motion to Intervene.

JACOBS & CRUMPLAR, P.A.


*/s/ Thomas C. Crumplar*
Thomas C. Crumplar, Esq. (#942)
Raeann Warner, Esq. (#4931)
Patrick Gallagher, Esq. (#5170)
750 Shipyard Dr., Suite 200
Wilmington, DE 19801
(302) 656-5445
Tom@jcdelaw.com

Of Counsel:

NIDEL & NACE, P.L.L.C.

Christopher T. Nidel, Esq. (to be admitted pro-hac vice)
Jonathan B. Nace, Esq. (to be admitted pro hac vice)

19

5335 Wisconsin Ave., NW
Suite 440
Washington, DC 20015
202-478-9677
chris@nidellaw.com
jon@nidellaw.com

Counsel for Community Plaintiffs and
Food and Water Watch

Tarah Heinzen (to be admitted pro-hac vice)
Food & Water Watch
1616 P Street, NW,
Washington, DC 20036
(202) 683-2457
theinzen@fwwatch.org

**Attorneys for Food & Water Watch.**

Jessica Culpepper (to be admitted pro-hac
vice)
Public Justice
1620 L Street NW, Ste 620
Washington, DC 20006
(202) 797-8600
jculpper@publicjustice.net

**Attorneys for Plaintiffs.**