## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE DEPARTMENT OF NATURAL RESOURCES & ENVIRONMENTAL CONTROL Plaintiff, | ) ) ) ) ) ) | Case No.: 1:18-cv-00838-MN-JLH |
| GARY and ANNA-MARIE CUPPELS, et al. Plaintiff-Intervenors, | ) ) ) ) | |
| v. | ) ) | |
| MOUNTAIRE FARMS OF DELAWARE, INC., a Delaware Corporation, Defendant. | ) ) ) ) | |

## INTERVENORS' OBJECTIONS TO THE MAGISTRATE JUDGE'S MEMORANDUM ORDER DATED AUGUST 10, 2020

**BAIRD MANDALAS BROCKSTEDT, LLC**
Chase T. Brockstedt, Esq. (DE Id. No. 3815)
Stephen A. Spence, Esq. (DE Id. No. 5392)
1413 Savannah Road, Suite 1
Lewes, DE 19958
Phone: (302) 645-2262
Chase@bmbde.com

OF COUNSEL:
Philip C. Federico, Esq. (*admitted pro hac vice*)
Brent Ceryes, Esq. (*admitted pro hac vice*)
SCHOCHOR, FEDERICO AND STATON, P.A.
1211 St. Paul Street
Baltimore, Maryland 21202
(410) 234-1000
*Attorneys for Intervenors*

Dated: August 21, 2020

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... ii, iii

INTRODUCTION ...........................................................................................................1

STANDARD OF REVIEW ..............................................................................................2

FACTUAL BACKGROUND AND PROCEDURAL POSTURE......................................2

ARGUMENT ..................................................................................................................7

CONCLUSION...............................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*AgroFresh Inc. v. Essentiv LLC*, 2019 WL 4917894 (D. Del. 2019) ..................................2

*Columbus-America Discovery Group v. Atlantic Mut. Ins.*,
      974 F.2d 450 (4th Cir. 1992) ...........................................................................8, 11

*County of Maui, Hawaii v. Hawaii Wildlife Fund*,
      2020 WL 1941966 (U.S. April 23, 2020)...............................................................5

*District of Columbia v. Merit Systems Protection Bd.*, 762 F.2d 129 (D.C. Cir. 1985) ......8

*DNREC v. Mountaire Farms of Delaware, Inc.*, 2019 WL 1430620 (Del. Super.) ............3

*Doe v. Hartford Life & Accident Ins., Co.*, 237 F.R.D. 545 (D.N.J. 2006) .......................2

*Eisai Co., Ltd. v. Teva Pharm. USA, Inc.*, 629 F. Supp. 2d 416 (D.N.J. 2009)..................2

*Green v. Fornario*, 486 F.3d 100 (3d Cir. 2007) ................................................................2

*Gwaltney of Smithfield. v. Chesapeake Bay Found.*, 484 U.S. 49 (1987) ..........................7

*Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370 (1987)...............................8

*Tutu Water Wells CERCLA Litig.*, 326 F.3d 201 (3d Cir. 2003) ....................................8, 9

*United States v. Lexington-Fayette Urban Cty. Gov't*,
      2007 WL 2156543 (E.D. Ky. July 24, 2007)....................................................9, 11

*United States v. E. Shoshone Tribe*, 2010 WL 11435111 (D. Wyo. Dec. 15, 2010).........11

**Authorities**

7C Fed. Prac. & Proc. Civ. §1920 (3d ed.) ........................................................................8

7C Fed. Prac. & Proc. Civ. §1922 (3d ed.) ........................................................................8

28 U.S.C. § 636(b)(1)(A) ...................................................................................................2

33 U.S.C. § 1251 ................................................................................................................2

42 U.S.C. § 6901................................................................................................................2

42 U.S.C. §9613(j) .............................................................................................................9

Federal Rule of Civil Procedure 24(a)(2) ..........................................................................3

Federal Rule of Civil Procedure 26 ..................................................................................11

Federal Rule of Civil Procedure 33 ..................................................................................11

Federal Rule of Civil Procedure 34 ...................................................................................11

Federal Rule of Civil Procedure 65 ...................................................................................11

Federal Rule of Civil Procedure 72(a) ...............................................................................2

## I.      INTRODUCTION

Intervenors respectfully object to the Magistrate Judge's Memorandum Order (D.I. 105, the "Order").  The Order ruled on the parties' competing positions on the shape and nature of the proceedings on Intervenors' Motion for a Preliminary Injunction (D.I. 87, the "MPI"), Mountaire's motion to stay the MPI (D.I. 91), and DNREC's recently filed First Amended Consent Decree (D.I. 92, 94, the "Amended Proposed CD").

At the beginning of this case, this Court granted Intervenors intervention with full rights as a party, without limitation (D.I. 15).  The Court ruled that, under the CWA and RCRA (defined below), Intervenors had a statutory right to intervene.  (*Id.* at 5, 9, 13).  Then, in a status conference, the Court stated that Intervenors would be permitted to provide comment and pursue discovery to argue about the reasonableness of any consent decree (D.I. 24).

In the Order, the Magistrate Judge made rulings contrary to the Court's earlier rulings and instructions.  Right up front, in paragraph 1 of the Order, the Magistrate Judge committed legal error by framing Intervenors' participation as pursuing a citizens' suit when, in fact, Intervenors are intervening parties by statute.  This foundational legal error shapes the rest of the Order which contains more legal and factual errors.   The Magistrate Judge improperly circumscribed Intervenors' rights as a full party by: refusing to consider Intervenors' MPI; declining to enforce Intervenors' prior discovery and precluding further discovery on the Amended Proposed CD; and declining to hold an evidentiary hearing on the Amended Proposed CD.

The Court should sustain Intervenors' objections, reverse the Order, and order that: i) DNREC and Mountaire respond to Intervenors' outstanding discovery and produce responsive documents within 30 days; ii) allow pre-hearing discovery as stated in D.I. 99, pgs. 9-10; and iii) hold an evidentiary hearing on both Intervenors' MPI and the Proposed Amended CD.

## II.       STANDARD OF REVIEW

"Objections to a Magistrate Judge's ruling on a non-dispositive motion are subject to a 'clearly erroneous and contrary to law' standard of review, pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a)." *AgroFresh Inc. v. Essentiv LLC*, 2019 WL 4917894, at *1 (D. Del. 2019) (sustaining objections to non-dispositive order).  "Under a 'clearly erroneous' standard, the Court will only set aside findings when it is 'left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Green v. Fornario*, 486 F.3d 100, 104 (3d Cir. 2007)).  "A Magistrate Judge's order is contrary to law only 'when the magistrate judge has misinterpreted or misapplied the applicable law.'" *Id.* (quoting *Doe v. Hartford Life & Accident Ins., Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006)).  "[A] magistrate judge's legal conclusions on a non-dispositive motion will be reviewed de novo." *Eisai Co., Ltd. v. Teva Pharm. USA, Inc.*, 629 F. Supp. 2d 416, 424 (D.N.J. 2009) (quoted in *AgroFresh*).

## III.      FACTUAL BACKGROUND AND PROCEDURAL POSTURE

This litigation arises out of gross wastewater spray irrigation permit violations and other wrongful conduct by Mountaire at its Millsboro, Delaware facility which has caused widespread groundwater contamination and the discharge of harmful pollutants to Swan Creek and Indian River which adjoin Mountaire's waste disposal fields.  This ongoing groundwater contamination has rendered the drinking water in nearby residences undrinkable and has caused and continues to cause adverse health effects, damage to sensitive adjacent waterways of national importance, significant loss of property value, and substantial distress to those residing near the facility.

More than two years ago, on June 4, 2018, DNREC filed a Complaint against Mountaire under the Federal Resource Conservation and Recovery Act ("RCRA"), codified in 42 U.S.C. § 6901 et seq., and the Federal Clean Water Act ("CWA"), codified in 33 U.S.C. § 1251 et seq.  (D.I.

1).  DNREC's Complaint alleges that Mountaire grossly violated its permit requirements in the disposal of its wastewater and land application of wastewater treatment plant sludge.  (See D.I. 1 at 4).  DNREC's Complaint also alleges that Mountaire's conduct has "caused or contributed to nitrate levels in the groundwater nearby the Facility exceeding the MCL" [maximum contaminant level] established by the U.S. Environmental Protection Agency ("EPA"), "thereby causing an imminent and substantial endangerment to human health and the environment." (See D.I. 1 at 5).

On the same date DNREC filed this federal action it also filed a state enforcement action against Mountaire in the Delaware Superior Court.  In the state court, DNREC immediately filed its first consent decree in a forum where, unlike here, Intervenors had no statutory right to intervene.  The Superior Court, at Intervenors' request, stayed the state case in favor of this federal action.  *See DNREC v. Mountaire Farms of Delaware, Inc.*, 2019 WL 1430620, at *3 (Del. Super.).  In the litigation in state court, DNREC and Mountaire admitted that they hoped the state court would rubber stamp their decree thus mooting any litigation in federal court.  *Id.* at *3.

In the same month DNREC filed this federal action, Intervenors moved to intervene.  (D.I. 4).  Intervenors are over 800 residents and property owners near Mountaire's Millsboro processing facility whose health and property interests have been substantially harmed and impaired by Mountaire's ongoing and wrongful conduct.

On March 25, 2019, the Court granted Intervenors' motion.  (D.I. 15). The Court found that, under Federal Rule 24(a)(2), the disposition of this action may, as a practical matter, impair or impede Intervenors' ability to protect their interests.  The Court found that if the then-Proposed Consent Decree were entered, it "could prevent Intervenors from obtaining remedial measures that they contend are (and may in fact be) more effective than DNREC's proposals." (D.I. 15 at 12).  The Court also found that "if this action is stayed while Mountaire attempts to perform its

3

obligations under the Proposed Consent Decree, Intervenors are likely barred from filing their own suit under RCRA during the stay. Such potential outcomes may impede or impair Intervenors' ability to protect their interests." (D.I. 15 at 12). The Court also found that DNREC had failed to show it was adequately protecting the interests of the Intervenors.  (D.I. 15 at 13-14).

Importantly, the Court granted Intervenors full rights as a party, without limitation.  The Court properly recognized that, under RCRA and the CWA, Intervenors had a statutory right to intervene and participate as parties.  (*Id.* at 5, 9, 13).  And the Court rejected DNREC and Mountaire's requests to impose limits on Intervenors' participation.  (*Id.* at 14).  Mountaire then filed a Rule 60 motion and an appeal to the Third Circuit, both seeking to limit Intervenors' participation.  (D.I. 17, 20).  The Court has not ruled on Mountaire's Rule 60 motion, and the Third Circuit dismissed the appeal. (D.I. 83).  Thus, neither this Court nor the Third Circuit have changed the Court's original ruling that granted Intervenors full, unlimited intervention.

On May 10, 2019, the Court held a status conference with the parties.  During this conference, the Court encouraged the parties to include Intervenors in the process of developing a new consent decree:

> What I am going to do is I will give DNREC the thirty days that it needs. I would encourage you to entertain some discussion from the interveners because otherwise you're going to propose something that's going to be unacceptable and <u>we're going to wind up with at least some period of comment and discovery, which I will likely allow for the interveners to get forward their opinions of experts and the facts that they contend would make any proposed consent order reasonable or unreasonable.</u>

(D.I. 24, May 10, 2019 Hrg. Tr. at p. 11) (emphasis added).  As the emphasized portion shows, the Court envisioned Intervenors conducting discovery to contest the reasonableness of any proposed consent decree.

Intervenors have pursued discovery, largely to no avail.  As to DNREC, Intervenors have issued three sets of requests for production over a year ago.  (D.I. 29, 44, 45).  DNREC has served

4

no responses.  As to Mountaire, Intervenors issued four sets of requests for production and one set of interrogatories, also over a year ago.  (D.I. 28, 43, 46, 48).  Mountaire has only responded to Intervenors' first set of requests for production and has served no other responses.  (D.I. 40, 52).

After DNREC filed its proposed consent decree in December 2019 (D.I. 65), the Court ordered Intervenors to file their objections to that decree and ordered the parties to meet and confer. (D.I. 67, 68).[1]  All three parties participated in the first meet and confer.  Only Intervenors and Mountaire participated in later meetings.  (*See* D.I. 81).  The meetings did not succeed.

The Court had imposed a stay during the meet and confer period, but that stay expired on April 30, 2020.  Intervenors filed their MPI on May 4, 2020.  Intervenors filed the MPI because, under the December 2019 proposed consent decree (D.I. 65), excessive nitrogen-laden wastewater will continue to be discharged for the next 3–5 years until Mountaire's wastewater treatment plant is upgraded.  And the December 2019 proposed consent decree did nothing to address (either in terms of testing or providing treatment) the hundreds of citizen drinking water from wells that are contaminated or at risk due to Mountaire's continuing waste disposal practices and other open dumping violations of RCRA.  Nor did the proposed consent decree address Mountaire's leaking lagoons in violation of RCRA or its failure to obtain a CWA discharge permit that would protect adjoining surface waters as now required by the Supreme Court in *County of Maui, Hawaii v. Hawaii Wildlife Fund*, 2020 WL 1941966 (U.S. April 23, 2020).  Mountaire moved to stay consideration of Intervenors' MPI. (D.I. 88, 91).

---

[1]  Intervenors also filed objections to the December 2019 proposed consent decree in the administrative record.  Notably, the Delaware Center for Inland Bays ("CIB"), created by Delaware statute and one of 28 Natural Estuary Programs to restore and protect sensitive waterways such as Swan Creek and Indian River that are part of the Delaware Inland Bays watershed, filed comments critical of the December 2019 proposed consent decree, and DNREC has provided no response to the CIB's comments.

On May 29, 2020, DNREC filed an amended proposed consent decree ("Amended Proposed CD"). (D.I. 92, 94). Neither DNREC nor Mountaire shared the Amended Proposed CD before DNREC filed it, much less involved Intervenors' in its drafting. Nor did DNREC provide any response to Intervenors' extensive objections that were filed on January 17, 2020. Likewise, Intervenors have not had a chance to submit objections to the Amended Proposed CD either in this Court or through the administrative record as DNREC has refused to open a new comment period.[2]

On June 9, 2020, the Magistrate Judge entered an order requiring the parties to meet and confer about how the case should proceed and then file a joint status report setting forth their agreement or respective positions on certain issues. (D.I. 96, 99). The Magistrate Judge held a status teleconference with all parties on July 6, 2020 and ordered the parties to file letters supporting their positions. (D.I. 99; 7/6/20 Minute Entry).

Intervenors, in their filings to the Magistrate Judge, sought to exercise their rights as a full party. Intervenors requested a period of fact and expert discovery followed by an evidentiary hearing on the Amended Proposed CD. (D.I. 99 at 4-5, 10-11). Intervenors also contended that, as a full party, they had a right to have their MPI heard before or along with consideration of the Amended Proposed CD. (*Id*. at 7-8, 10, 21). Intervenors also provided ample authority supporting their right to pursue discovery, D.I. 102, and distinguished the authority DNREC and Mountaire relied on, D.I. 103.

The Magistrate Judge issued the Order on August 10, 2020 (D.I. 105). In the Order, the Magistrate Judge granted Mountaire's motion to stay the MPI, denied Intervenors any past or future discovery, ordered DNREC to file a motion to seek the entry of the Amended Proposed CD, and

---

[2] Intervenors and their experts have reviewed the Amended Proposed CD, and, although there are some very modest changes to the December 2019 proposed consent decree, the violations of the CWA and RCRA cited above are not addressed and will continue indefinitely.

provided a briefing schedule and oral argument date (not an evidentiary hearing) to consider DNREC's motion. (*Id.*).

## IV.   ARGUMENT

In the Order, the Magistrate Judge made rulings contrary to the Court's earlier decisions and instructions. The Order essentially undoes the Court's grant of intervention to Intervenors and prevents Intervenors from exercising their rights as a full party. The Court should sustain Intervenors' objections and restore their procedural rights.

*First*, the Order begins with a fundamental and clear legal error—conflating citizen suits with intervention. In paragraph 1, the Magistrate Judge leads off by stating: "The citizen suit provision of the CWA 'is meant to supplement rather than supplant governmental action' and its legislative history provides that '[t]he Committee intends the great volume of enforcement actions be brought by the State' and that the citizen suit is appropriate only 'if the Federal, State, and local agencies fail to exercise their enforcement responsibility.'" (D.I. 105 at ¶3 (quoting *Gwaltney of Smithfield. v. Chesapeake Bay Found.*, 484 U.S. 49, 60 (1987), which was a citizen suit). The Magistrate Judge then states that "the citizen suit provision of RCRA reflects the same policy." *Id*.

This action is not a citizen suit. The Court expressly noted the difference in its March 25, 2019 decision. (D.I. 15 at 4-5). The Court explained that a citizen suit was barred by DNREC filing this action. But the CWA and RCRA both "afford citizens a right to intervene in such a pending action" like DNREC's suit—a right Intervenors exercised and the Court granted. (D.I. 15 at 5). The Order reflects the Magistrate Judge's failure to recognize this important distinction. While the ability to file a citizen suit is secondary—filing is only allowed if the state or federal agency has not commenced enforcement—intervention is entirely different. Upon the grant of full

intervention, Intervenors became full parties.  The Magistrate Judge erroneously conflated the provisional right to file a citizen suit with party status arising from intervention.

There is nothing secondary about Intervenors' status.  As parties, Intervenors have a right to have their discovery requests answered and their motions heard. *Columbus-America Discovery Group v. Atlantic Mut. Ins.*, 974 F.2d 450, 469 (4th Cir. 1992) ("In general, intervenors of right 'assume the status of full participants in a lawsuit and are normally treated as if they were original parties once intervention is granted.'" (quoting *District of Columbia v. Merit Systems Protection Bd.*, 762 F.2d 129, 132 (D.C. Cir. 1985)).  Intervenors are permitted to litigate fully on the merits once admitted to a suit. *See generally* §1920 Status of Intervenor, 7C Fed. Prac. & Proc. Civ. §1920 (3d ed.); *see also*, *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 382 (1987) (Brennan, J, concurring) (noting that "a district court has less discretion to limit the participation of an intervenor of right" due to their significant interest in the litigation).  In fact, the Federal Rules do not restrict the ability of parties granted intervention as a matter of right to conduct discovery. *See* §1922 Conditions on Intervention, 7C Fed. Prac. & Proc. Civ. §1922 (3d ed.)

Contrary to that authority, the Magistrate Judge, building on this foundational error and skepticism about Intervenors' rights and role, neutered Intervenors' involvement and procedural rights.  The Court has granted Intervenors intervention as a party without limiting their rights.  This Order ignores and reverses that ruling.

*Second*, the Order describes the Court's scope of review too narrowly, relying on an inapposite case.  Intervenors agree that the Court reviews the Amended Proposed CD using a reasonableness standard.  But the Order quotes from a Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") case as support for its view and extremely narrow scope of review.  (D.I. 105 at 4 (quoting *In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201,

209 (3d Cir. 2003)).  Under CERCLA, judicial review is limited to the administrative record.  42 U.S.C. §9613(j).  That is materially different from cases under the CWA and RCRA where discovery is permitted.  *See United States v. E. Shoshone Tribe*, 2010 WL 11435111, at \*4 (D. Wyo. Dec. 15, 2010) (describing ongoing discovery in a CWA case); (D.I. 24, May 10, 2019 Hrg. Tr. at p. 11; stating Intervenors would be permitted to conduct discovery).  Thus, the Order's reliance on a CERCLA case to describe, and limit, the scope of review is clear legal error.[3]

*Third*, the Order's findings on the procedural history are clearly erroneous and undermine the Order's rulings.  Those errors include:

- 7th Whereas: "… the parties engaged in multiple meet-and-confer sessions…."
    - This is incorrect because DNREC only participated in one meet-and-confer session.

- 9th Whereas: "[O]n May 29, 2020, DNREC filed a First Amended Proposed Consent Decree that contains additional mitigation measures to address certain concerns raised by Intervenors during the meet-and-confer process, as well as public comments on the Proposed Consent Decree and First Amended Proposed Consent Decree that were received by DNREC during the public comment periods (D.I. 92, 94)."
    - This incorrectly assumes comments were submitted on the Amended Proposed CD when in fact DNREC has not opened another comment period—no one has commented on the latest proposed consent decree.
    - While the Amended Proposed CD may include some additional mitigation measures, it is an open question whether those measures actually address the concerns of Intervenors, the CIB, and others.  Indeed, DNREC admits it has yet to explain how the Amended Proposed CD addresses those concerns (D.I. 92 at 2).

- Paragraph 3: "[T]he record indicates that some of [Intervenors'] objections were addressed in the First Amended Proposed Consent Decree.  Intervenors also had the opportunity to object during the public comment period for the First Amended Proposed Consent Decree.
    - The first sentence is wrong because nothing in the record shows that the Amended Proposed CD addresses Intervenors' objection, much less resolves them.  As DNREC admits, it has yet to explain how the Amended Proposed CD, with very few changes, addressed Intervenors' concerns (D.I. 92 at 2).

---

[3] This error also influenced the Order's improper denial of Intervenors' request for discovery.  (D.I. 105 at ¶6 ("The Court finds that permitting discovery at this time would be inappropriate and unnecessary, *particularly in view of the limited standard of review applicable to consent decrees* and the fact that further discovery will be unnecessary if the Court enters the First Amended Proposed Consent decree.") (emphasis added).

   ○ The second sentence is wrong because there was no public comment period for the Amended Proposed CD.

  These errant findings are the underpinning for the Order's rejection of Intervenors' request for discovery and an evidentiary hearing.  The Magistrate Judge appears to believe that, through the informal processes of meet-and-confers and public comment, the parties have fully vetted and explained the scientific and technical rationale for their positions.  Thus, any formal discovery is unnecessary, and the dispute can be decided based solely on oral argument.

  In reality, it has been a one-way street, with DNREC and Mountaire refusing to engage on the important details.  (*See* D.I. 75, 77, 79, 81, 84 (status reports)).  Intervenors have devoted significant resources and experts to explain to DNREC and Mountaire the many problems with their proposed consent decrees.  By contrast, DNREC has never had a technically qualified staff person or expert participate in the discussions, nor has it responded to Intervenors' and others' objections and comments.  While Intervenors' discussions with Mountaire were more extensive, Mountaire had very few technical personnel involved.  None of the meet-and-confers were on the record, so Intervenors' cannot use much of the information discussed to effectively advocate against the Amended Proposed CD.  And all those sessions occurred before the filing of the Amended Proposed CD—the agreement on which the Court will rule.  DNREC and Mountaire refused to allow Intervenors to participate in the crafting of the document and did not share it with Intervenors before filing it.  On top of all that, DNREC responded to none of Intervenors' discovery, and Mountaire only responded to one of four sets of Intervenors' discovery.  Without discovery responses, Intervenors are handicapped in their efforts to evaluate the Amended Proposed CD.

  At bottom, Intervenors have been an open book, DNREC has barely participated, and Mountaire has listened to Intervenors but has not meaningfully responded.  Formal discovery—

the right of any party—is necessary to understand the Amended Proposed CD so the adversarial process can play out and provide the Court with a full evidentiary record on which to rule. The Order improperly prevents this.

*Fourth*, the Order relegates Intervenors' to a second-class party, elevating DNREC and Mountaire's settlement agreement over Intervenors' discovery requests and MPI. This is legal error. As noted, the Court granted Intervenors' intervention as a full party without limitation. As a result, Intervenors had a right to exercise their rights under the Federal Rules of Civil Procedure by serving discovery (Rules 26, 33, and 34) and moving for preliminary injunctive relief (Rule 65). *See Columbus-America*, 974 F.2d at 455 ("We also hold that once intervention was allowed, the district court abused its discretion by not affording the intervenors sufficient time for discovery,"). Even in cases which have imposed certain limitations, intervenors have been allowed to participate in discovery. *See United States v. E. Shoshone Tribe*, 2010 WL 11435111, at *4 (D. Wyo. Dec. 15, 2010) (providing discovery to intervenors in a CWA case, but limiting scope because they sought to intervene near the end of the discovery period); *United States v. Lexington-Fayette Urban Cty. Gov't*, 2007 WL 2156543, at *2 (E.D. Ky. July 24, 2007) (rejecting defendant's request to limit intervenors' participation in a CWA to solely commenting on a consent decree, allowing intervenors to seek leave to conduct discovery). The Magistrate Judge distinguished *Columbus-America* and *E. Shoshone Tribe* because those courts permitted discovery before *trial*. (D.I. 105 at n.1). The Magistrate Judge described the forthcoming review of the Amended Proposed CD as "not a 'determination on the merits'" and just a review of the settlement. *Id.* This distinction does not justify a complete denial of Intervenors' discovery rights as a full party. While a full trial is not near, the Court still needs evidence and informed advocacy to decide whether it should approve the Amended Proposed CD. Discovery is necessary to develop a proper record.

11

What's more, Intervenors' MPI concerns *imminent and ongoing* irreparable harm to public health and the environment that the Amended Proposed CD does not address. Yet the Order stays consideration of Intervenors' motion on imminent harm in favor of the Amended Proposed CD which only requires meager, future action by Mountaire while many of Mountaire's violations of the CWA and RCRA continue unabated and unaddressed by the Amended Proposed CD. This is unfair to Intervenors, jeopardizes the environment and public health, and is contrary the Court's earlier rulings about Intervenors' rights as a party.

* * *

The Order's many compounding errors require reversal. The Court granted Intervenors' intervention without limiting their rights as a party. The Order improperly circumscribes Intervenors' rights, relegating them to mere commenters based on a misunderstanding of the nature of this case and a failure to recognize Intervenors' statutorily permitted role as a full party.

This Court, with the proper understanding of the case and Intervenors' rights, should reorient this case so that the necessary facts can be discovered, the parties' positions can be properly vetted, and the adversarial process can help the Court reach the correct decision. To that end, the Court should sustain Intervenors' objections, reverse the Order, and further order that: i) DNREC and Mountaire respond to Intervenors' outstanding discovery and produce responsive documents within 30 days; ii) allow pre-hearing discovery as stated in D.I. 99, pgs. 9-10; and iii) hold an evidentiary hearing on both Intervenors' MPI and the Proposed Amended CD.

## V.     CONCLUSION

Based on the arguments and authorities above, Intervenors respectfully request that the Court sustain Intervenors' objections, reverse the Order, and enter the attached proposed order granting Intervenors' their requested relief.

**BAIRD MANDALAS BROCKSTEDT, LLC**

/s/ *Chase T. Brockstedt*

Chase T. Brockstedt, Esq. (DE Id. No. 3815)
Stephen A. Spence, Esq. (DE Id. No. 5392)
1413 Savannah Road, Suite 1
Lewes, DE 19958
Phone: (302) 645-2262
Chase@bmbde.com

OF COUNSEL:
Philip C. Federico, Esq. (*admitted pro hac vice*)
Brent Ceryes, Esq. *(admitted pro hac vice)*
SCHOCHOR, FEDERICO AND STATON, P.A.
1211 St. Paul Street
Baltimore, Maryland 21202
(410) 234-1000

Dated: August 21, 2020                  *Attorneys for Intervenors*

13